## Russell Rowell v. Town School District of Canaan

[189 A.2d 785]

January Term, 1963

Present: Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.

Opinion Filed March 6, 1963

*Maxwell L. Baton* and *Lawrence Miller* for the plaintiff.

*Arthur L. Graves* and *Richard A. Hull* for the defendant.

**Hulburd, C. J.** This is a controversy between a school bus operator and a board of school directors. For several years the plaintiff had transported school children in his buses for the defendants. In doing so, it was his practice to pick up the parochial school children on the return trip from the public school. He did not carry the parochial school pupils all the way into their school yard for that is across the Connecticut river in New Hampshire. There is no parochial school in Canaan. But he did drop these students off on the Vermont side of a bridge not far from where their schoolhouse is situated. As time went on no doubt this was what the community had come to expect from him.

Being mutually desirous of continuing the existing arrangement for another school year, on the 12th day of May 1961, the school directors and the plaintiff executed an instrument which read as follows:

"CONTRACT FOR TRANSPORTATION
TOWN OF CANAAN, VERMONT

Agreement in duplicate between Russell Rowell of Canaan, Vermont, driver, and the Board of School Directors of the town of Canaan, Vt. acting for said town, witnesseth:

1. Said driver agrees to convey to and from the Canaan, Vermont Schools all the pupils entitled to transportation and residing along the route herein specified, as per list furnished him by said Board, and the said Board agrees to hire said Russell Rowell.

2. Said driver agrees to transport the above children during the hours designated by the Board of School Directors, and to *observe the School Bus Law at all times.* There will be 170 "net" days of school for elementary grades and 175 for high school.

3. Said driver agrees without liability of the town or the members of the School Board, to accept termination of this contract whenever his services prove unsatisfactory to the Board.

4. Said driver agrees to accept 21 twenty One dollars per day for transporting said children to and from school, payment for services herein specified to be made twice a month.

5. Said driver agrees to extend or deviate from said route on request of said Board and on condition of reasonable compensation to be agreed upon by him and said board.

6. Said driver agrees to comply fully with all the conditions stipulated in this contract.

7. Unless terminated previously, as above mentioned, it is agreed that this contract continue in force from July first 1961 to June 30, 1962.

IN WITNESS WHEREOF WE HAVE HEREUNTO SET OUR HANDS THIS 12th DAY OF MAY, 1961."

The provisions of the foregoing instrument were exactly the same as they had been in previous years with the one exception that the plaintiff's compensation had been increased by fifty cents a day. The simplicity of this unsophisticated arrangement gradually acquired complications. Thus, at the board meeting of May 12 there was talk between the members of the school board and the plaintiff to the

effect that he would be paid only for those days on which the public schools were in session and, unlike in the past, he would not be paid for operating his bus to transport parochial school pupils on days when their school was in session and the public schools were not. It is apparent that this was an effort to maintain what the school directors thought was a proper attitude with regard to the legal aspect of the arrangement. This, perhaps, was enough to open up the whole question of supplemental pay with respect to the parochial school pupils. Anyhow, shortly after June 12, 1961, the plaintiff informed Father Nadeau, who was in charge of the parochial school, that unless he received an additional $7.00 a day from some source he would not transport the parochial school pupils. Father Nadeau conveyed this information to some of the parents of the pupils concerned. Two of them, together with Stanley Hann, a member of the school board, went to the plaintiff's home. This was some time after school had closed in the first part of June. At that time, reference was made to what the plaintiff had contracted to do. He thereupon brought out his copy of the contract for examination. The plaintiff insisted that he would have to have $7.00 more a day. He voiced the thought that his present bus registration and insurance coverage might have to be changed (later on in the summer after attending a school bus operators' conference he became convinced of this) and this would mean a considerable increase in his operating expense over what it would be if he carried public school children alone. He was accused by the school director of breaking, not his contract, but his promise. The plaintiff become angry and said that he wasn't going to respect his contract and in uncouth language told the group where they could "shove it" and with this he threw the contract at his visitors. The visitors were more restrained. They "wanted a settlement." They picked the contract up and returned it to him. The plaintiff insisted that he couldn't make a living with the contract and that Mr. Hann, the school board member could have it. In another connection, the plaintiff testified that after he had signed the contract, he would have been willing to transport the parochial school children if it had not entailed a great amount of insurance and registration fees.

In any event, following the occurrence of July 12 at which the plaintiff threw the contract at school director Hann, the school board met the next evening to consider the episode and the school bus contract. The plaintiff was requested to attend. He declined to

meet with the board. Thereafter, on July 17, 1961, the board wrote a letter to the plaintiff reading as follows:

"Dear Russell:

Due to the unfortunate circumstances that have arisen in connection with your transportation contract with the Canaan School Board. 1. Request for an additional $7.00 per school day. 2. The Board's refusal to pay for transportation on *non*-public school days for the benefit of private or parochial schools.

For these reasons the Canaan School Board hereby cancels your contract with them under the provisions of Par. 3 of the contract between you and the Canaan School Board that was signed on May 12, 1961.

You may of course put in a new bid under the terms of a new contract, terms of which and opening date will be publicly advertised by the school board.

In event you do not receive the new contract you will be expected to pay in full the balance of your note now held by the School Board."

On July 31, 1961 the school board sent a second letter to the plaintiff saying, "in view of your attitude toward our Board and your lack of cooperation with our Board and your unwillingness to attend some of our meetings as we have requested of you and discussing our transportation problems and school problems with us, we have concluded that your services are unsatisfactory to our School Board and we hereby notify you that your contract for transportation dated May 12, 1961 is terminated. Take notice and govern yourself accordingly."

Such is the background which led up to the suit brought by the plaintiff against the Town School District. In the trial which followed, the defendant had a verdict, and the plaintiff has appealed to this Court alleging numerous assignments of error.

The first of these was relative to the cross-examination of the plaintiff by counsel for the defendant. In the course of it, the defendant was permitted, over the objection of the plaintiff, to ask whether the plaintiff made any effort to dispose of the school bus after the defendant cancelled the agreement. By this sort of inquiry the defendant was seeking to find out whether the plaintiff did what he could to mitigate damages. The plaintiff's answer was, "Try to

dispose of it? I tried to get a job with it." The answer, thus elicited, was not prejudicial to the plaintiff; it met the very point that the defendant was seeking to make. The question was proper exploratory cross-examination. The answer incorporated in advance proper redirect evidence to meet what was being brought out on cross-examination. No error appears.

Along the same line, the plaintiff complains because the trial court allowed the defendant to ask, "Where are you employed?" It should be obvious that if, upon the cancellation of a transportation contract, both a school bus and its owner-operator are obliged to stand idle, the damages will not be the same as where only one of them has been so affected. No error appears. Even though there was a defendant's verdict in this case, we have dealt with these two exceptions, since the plaintiff is fearful that the verdict was what it was because the jury found no damage at all due to the trial court's error in regard to the evidence.

The plaintiff complains that the defendant was permitted to show that the plaintiff "refused to attend a meeting of the school board at a time subsequent to the execution of the contract but before either party was bound to perform under it." There was no error in the admission of this evidence. As the evidence stood, the question was whether the plaintiff's words and conduct at the occurrence which took place early in July in the interview at his home, when school director Hann and the Catholic parishioners were present, amounted to a repudiation of the contract. An unconditional notice by one party of his intention not to perform a contract authorizes the other to rescind. 17 C.J.S. §428 at p. 911. The school directors' meeting, which the plaintiff refused to attend, was one called the very next day after the scene referred to. It is a fair inference that what the plaintiff had said precipitated it. It tended to show that the school board was proceeding reasonably and cautiously. This meeting afforded the plaintiff an opportunity to withdraw any statements made by him. He must have realized that. His refusal to attend was some indication that he meant what he said and that he had undergone no change of mind since the episode. It was proper that evidence of his refusal to attend should be considered by the jury along with the other circumstances in their determination of

whether the words and conduct of the plaintiff made clear an intention to be no longer bound by his contract.

The reception in evidence of the second notice sent to the plaintiff by the school board did not constitute prejudicial error. It appeared that following the first letter from the school to the plaintiff, the plaintiff had replied to the board and wanted to know what "the unfortunate circumstances were" which were mentioned in the school board's first letter. The second letter was in answer to the plaintiff's inquiry. It was sent by the defendant prior to the institution of suit, September 22, 1961. It was admissible for the same reasons that the first letter was admissible, and that letter was introduced by the plaintiff.

The plaintiff's next exception is not directed specifically to a definite question, but apparently is to certain testimony of the superintendent of public schools regarding the policy of the state Department of Education concerning the transportation of parochial school pupils. The plaintiff, himself, in the cross-examination of a school director, opened up the whole matter earlier by inquiring if the board had not been advised on this problem by the Education Department. This was denied. When the school superintendent took the stand the defendant was allowed to bring out that he had advised against "hauling the children to private schools at public expense when you're doing that and nothing else. Go over a route just purposely for them." Where the transportation furnished did not involve "additional mileage," he had not advised against furnishing such transportation, and he went on to say, without objection on the part of the plaintiff, that he knew of no ruling of the Department of Education to the contrary. No doubt the attitude of the state Department of Education was unnecessarily brought into this case, but since this matter was opened up by the plaintiff, himself, we are not disposed to hold that what followed constituted reversible error.

The plaintiff's next exception is the refusal of the court to admit a letter from the plaintiff's attorney to the defendant's school board. This letter was dated July 27, 1961 but was not "presented" until after July 31, 1961. It is enough to say that there would have been no doubt as to the admissibility of the letter had it confined itself to giving notice that the plaintiff was ready and willing to

perform his contract, and that he intended to seek damages because of the defendant's purported cancellation of the contract. The letter went beyond that, however, and contained self-serving and argumentative material which was entirely inadmissible. No offer was made to delete the objectionable portions. In this situation, the trial court was justified in refusing to admit the letter in evidence. *Turgeon* v. *Baker,* 103 Vt. 61, 63, 163 Atl. 588.

The plaintiff claims that the trial court was in error in failing to direct a verdict in his favor. He says that the only question for the jury to determine was the amount that the plaintiff was entitled to recover, and that even as to that, the evidence was such as to have justified a directed verdict in a specific sum in his favor. We are not convinced as to either proposition. As the evidence stood, it furnished a basis for opposing inferences on the two main questions in the case. As to the first, concerning whether the plaintiff was bound to transport parochial pupils, the trial court appropriately instructed the jury, "Now, you're called on to ascertain the intention of the parties as manifested by their acts, conduct, and by the writing into which they entered. You must examine this contract and read the instrument from its four corners and say what the parties meant by the language employed . . . If you find the language used by the parties is not plain—or ambiguous—then you may consider such circumstances surrounding the transaction in question in determining the making (sic, probably "meaning") of words or terms employed by the parties." The second main issue was properly put to the jury when the court asked the jury to determine whether "the plaintiff's words, acts and conduct evinced a clear unequivocal intention to refuse performance" whereby "the defendant was justified in cancelling as it did." There was evidence for the jury to consider on both of the propositions submitted by the court. Moreover, when the plaintiff goes on to say that the defendant is seeking to justify the cancellation of the contract for reasons not open to it, we cannot agree. The defendant cannot fairly be said to have shifted its grounds for cancellation as claimed by the plaintiff. For this reason, we do not reach the question of estoppel urged upon us, which the plaintiff says arose from his reliance upon the letter he received from the defendant, dated July 17, 1961. We think that this letter from the school board to the plaintiff, considered as a whole, does not limit the school board as narrowly as the plaintiff

contends. It does not, in effect, make unsatisfactory services the basis for terminating the contract. It states "reasons" as a reading of it readily discloses. The board assumed that those reasons had to be asserted *through* paragraph 3 of the contract. In this they were in error. The fact, however, that they may have been mistaken about this does not deprive them of whatever rights they actually had.

■ This brings us to the last of the plaintiff's exceptions which we need to consider. It pertains to the following instruction included in the court's charge: "Now there is nothing in the contract between the parties, which is plaintiff's Exhibit #1, which authorizes or permits the plaintiff while engaged in the transportation of school pupils pursuant to that contract to make an additional charge of $7.00 per day for pupils not attending the public schools, or to transport parochial school pupils at their parents' expense while the plaintiff is engaged in the performance of the contract for the defendant. Now, if you find that such is the fact, you may consider the same along with all other evidence bearing upon the question of the plaintiff's intention of compliance or non-compliance with the obligations which you may find he was bound to do and perform under his agreement with the defendant Town School District." We think this instruction contains contradictions within itself. On the one hand, it allows the jury to determine "the obligations which . . . (the plaintiff) was bound to do and perform under his agreement" and on the other hand, it states there is nothing in the contract permitting a $7.00 a day additional charge. As the evidence stood, we think that the jury could have properly found either of two possibilities: 1. that the contract never bound the plaintiff to transport the parochial school children, but instead was content to rely on a gentlemen's agreement to do so, the observance of which would be brought about solely through the force of public opinion. There is considerable evidence tending to indicate that this was exactly the *modus operandi* relied upon; but, 2. the jury might have found from the circumstances and conduct of the parties that there was, as a part of the transportation contract, an undertaking to transport private school pupils on return trips from the public schools, under an arrangement which the parties thought they had worked out whereby this could be done in a way not involving any additional expense to the defendants, and hence legally proper. The parties do not ques-

tion but that the law goes at least this far. *Board of Education of Baltimore County* v. *Wheat*, 174 Md. 314, 199 Atl. 628, 632; *Everson* v. *Board of Education*, 330 U. S. 1, 17, 67 S.Ct. 504, 91 L.Ed 711, 168 A.L.R. 1392. This being so, the trial court's charge that the plaintiff had no right to seek the $7.00 a day additional pay was correct only if the jury first found that the contractual obligation was that set forth under "2." Under "1," the plaintiff would have had a right to seek additional pay, since he would not be violating his contract, but only his gentlemen's agreement. The court's charge was prejudicial to the plaintiff since it allowed the jury to consider the move of the plaintiff to get additional pay as evidence of repudiation of the contract when, in fact, it may have been only repudiation of the gentlemen's agreement. Since the real crux of the case was whether there was a justified cancellation of the contract by the defendant, the court's erroneous charge in this connection was bound to be harmful to the plaintiff in the absence of any attempt to discriminate between the two possible situations which may have existed.

For this reason, we are obliged to reverse the judgment in order that this aspect of the case may be fairly presented to the jury.

*Judgment reversed and cause remanded.*