Sylvio J. **PITASI** and Joan Pitasi, Plaintiffs–Appellants,

v.

The **STRATTON CORPORATION,** Defendant–Appellee.

No. 1334, Docket 91–9237.

United States Court of Appeals, Second Circuit.

Argued April 9, 1992.

Decided July 8, 1992.

James W. Spink, Burlington, Vt. (Frederick S. Lane III, Dinse, Erdmann & Clapp, of counsel), for plaintiffs-appellants.

Allan R. Keyes, Rutland, Vt. (John J. Zawistoski, Harry R. Ryan III, Ryan Smith & Carbine, of counsel), for defendant-appellee.

Before: FEINBERG, WINTER and ALTIMARI, Circuit Judges.

ALTIMARI, Circuit Judge:

The underlying claim in this action arises from an injury suffered by plaintiff-appellant Sylvio J. Pitasi ("Pitasi") in a skiing accident at Stratton Mountain, a ski resort owned and operated by defendant-appellee The Stratton Mountain Corporation ("Stratton"). Pitasi's complaint alleged that his injuries, which left him paralyzed from the neck down, resulted from Stratton's negligence in failing to rope off the side entrances to a closed trail. Pitasi's wife Joan also joined suit, alleging loss of consortium. After a nine-day trial, a jury found that both Pitasi and Stratton had been negligent, but attributed eighty percent of the liability for the accident to Pitasi. Under Vermont's comparative negligence statute, Vt.Stat.Ann. tit. 12 § 1036 (1969), the jury's findings precluded recovery by plaintiffs-appellants Sylvio J. and Joan Pitasi ("the Pitasis"). The Pitasis moved for a new trial pursuant to Fed.R.Civ.P. 59(a). The United States District Court for the District of Vermont (Franklin S. Billings, Jr., *Judge*) denied this motion and entered judgment in favor of Stratton.

On appeal, the Pitasis contend that the district court abused its discretion and com-

mitted reversible error by: (1) refusing to permit the Pitasis to introduce into evidence Stratton's subsequent remedial actions regarding the closed trail in order to rebut Stratton's defense of contributory negligence; (2) refusing to permit the Pitasis to introduce into evidence certain Stratton records to rebut the testimony of Stratton's employees concerning the procedures used to close the trail in prior years; (3) permitting Stratton to introduce into evidence and submit to the jury Pitasi's season ski pass, the terms of which Stratton contends amounted to a waiver of liability, without giving the jury proper instructions; and (4) failing to inquire during its voir dire examination about the potential biases or fixed opinions of prospective jurors.

For the reasons set forth below, we reverse and remand for a new trial.

## BACKGROUND

The facts underlying the claim in this case can be succinctly stated. In late January 1989, the Pitasis travelled from their home in Greenwich, Connecticut to Vermont in order to ski Stratton Mountain. On January 28, 1989, Pitasi was seriously injured while skiing at Stratton's resort on a trail called "East Meadow." Stratton had closed East Meadow on the day of the accident because of dangerous conditions. However, only the top entrance to East Meadow had been roped off, and the trail remained accessible from a number of side entrances. Pitasi initially started down a trail called "West Meadow." This trail bends to the left, and a skier proceeding straight down the right side of West Meadow can cross over to East Meadow through one of its side entrances without changing direction. Pitasi did just that. According to Pitasi, after entering East Meadow from a side entrance, something "grabbed" his skis and catapulted him into the air. As a result of the accident, Pitasi was paralyzed from the neck down.

The Pitasis filed suit on January 15, 1990. In their complaint, the Pitasis alleged that their injuries had resulted from Stratton's negligent failure to close the East Meadow trail.

After a nine-day trial, the jury found that both parties had been negligent, but assessed Pitasi with eighty percent of the responsibility for his accident. Under Vermont's comparative negligence statute, Vt. Stat.Ann. tit. 12 § 1036 (1969), this assessment of responsibility resulted in a verdict for the defendant. The Pitasis moved for a new trial pursuant to Fed.R.Civ.P. 59(a), and raised the same issues now on appeal. The district court denied this motion and judgment was subsequently entered on behalf of Stratton.

The Pitasis now appeal.

## DISCUSSION

### I. *The Evidentiary Issues*

#### A. *Stratton's Subsequent Remedial Measures*

After deciding to close the East Meadow trail, Stratton only roped off the top entrance to the trail. No rope or warning sign was placed at any of East Meadow's side entrances. However, immediately after Pitasi's accident, Stratton ordered its employees to place warning signs and ropes across the side entrances to the East Meadow trail.

■ At trial, Stratton's primary defense was that the risk posed by the East Meadow trail was so obvious that there was no need for any sign, rope, or other warning. As a result of the alleged obvious risk, Stratton contended that Pitasi was contributorily negligent in skiing East Meadow. To counter this defense and to impeach Stratton's witnesses, the Pitasis sought to introduce into evidence Stratton's subsequent remedial measures. The district court refused to allow the jury to hear this evidence. The Pitasis maintain that in so doing the district court abused its discretion and committed reversible error. We agree.

Pursuant to the Federal Rules of Evidence, testimony concerning subsequent remedial measures is not admissible "to prove negligence or culpable conduct." Fed.R.Evid. 407. However, such evidence is admissible to rebut a *defense* based upon

the nature or condition of the accident scene. *See e.g., Rimkus v. Northwest Colorado Ski Corp.*, 706 F.2d 1060, 1066 (10th Cir.1983) (allowing introduction of evidence of remedial measures taken by a ski resort after an accident); *Kenny v. Southeastern Pennsylvania Transp. Auth.*, 581 F.2d 351 (3d Cir.1978) (holding evidence that new fluorescent fixture was installed soon after rape attack properly admitted to counter defendant's inference that light was adequate), *cert. denied*, 439 U.S. 1073, 99 S.Ct. 845, 59 L.Ed.2d 39 (1979); *see also* 2 Weinstein and Berger, *Weinstein's Evidence* ¶ 407[5], at 407–32 to 407–33 (concluding that it would be "manifestly unjust" to deny a plaintiff the right to elicit evidence on remedial measures where the defendant raised a *defense* involving the nature of the condition at the time of the accident).

In the present case, Pitasi did not seek to introduce Stratton's subsequent remedial measures in order to prove that Stratton was negligent. Rather Pitasi sought to impeach Stratton's witnesses and to rebut its defense that Pitasi was contributorily negligent because the dangerous conditions on East Meadow were so obvious and apparent that warning signs or ropes at the trail's side entrances were unnecessary. Rule 407 clearly allows a plaintiff to introduce evidence of remedial measures to rebut such assertions. *See, e.g., Rimkus*, 706 F.2d at 1066. Failure to admit evidence of remedial measures in analogous circumstances has been held to constitute an abuse of discretion. *See, e.g., Petree v. Victor Fluid Power, Inc.*, 887 F.2d 34, 41 (3d Cir.1989) (holding that trial court abused its discretion by refusing to admit evidence of remedial measures to impeach testimony that the use of a product posed no inherent danger); *Muzyka v. Remington Arms Co., Inc.*, 774 F.2d 1309, 1313–14 (5th Cir.1985) (holding that trial court abused discretion in not permitting plaintiff to proffer evidence of remedial measures where defendant argued that the product in question was the best and safest on the market); *Anderson v. Malloy*, 700 F.2d 1208, 1212–14 (8th Cir.1983) (holding that trial court abused its discretion in excluding evidence of remedial measures to impeach

defendants' testimony that they had taken every security measure possible).

■ Because Pitasi was unable to introduce the remedial measures into evidence, it was impossible for him to rebut defendant's argument that he was contributorily negligent. Nor could Pitasi effectively impeach the testimony of defendant's employees that the danger was obvious and apparent. The probative value of this evidence clearly outweighed its prejudicial effect, *see* Fed.R.Evid. 403, and its exclusion constituted an abuse of discretion. *See, e.g., Petree*, 887 F.2d at 40.

### B. The Closure Of East Meadow In Prior Years

During Stratton's case in chief, its employees testified that Stratton had never placed ropes between the islands that separate the East and West Meadow trails when East Meadow had been closed. On its rebuttal case, Pitasi recalled one of Stratton's employees and attempted to elicit testimony pertaining to the closure of East Meadow the year before the accident. Stratton's records, obtained during the course of the trial, suggested that the side entrances to East Meadow had been roped off in prior years. The district court, however, sustained Stratton's objection that this line of questioning was not proper rebuttal and that any probative value was outweighed by the prejudicial effect. The Pitasis contend that the court abused its discretion in excluding this evidence.

■ It is well-settled that a trial court's determination concerning the order of proof and the scope of rebuttal testimony will not be disturbed absent an abuse of discretion. *E.g., Geders v. United States*, 425 U.S. 80, 86, 96 S.Ct. 1330, 1334, 47 L.Ed.2d 592 (1976). However, "such discretion should be tempered greatly where the probative value of proffered evidence is potentially high and where such evidence, though admissible on the case in chief, was unnecessary for the plaintiff to establish in its *prima facie* case." *Weiss v. Chrysler Motors Corp.*, 515 F.2d 449, 457–58 (2d Cir.1975) (holding that district court abused

its discretion by precluding rebuttal testimony); *see also Benedict v. United States*, 822 F.2d 1426 (6th Cir.1987) (same).

■ The testimony that the Pitasis sought to elicit was not necessary for its *prima facie* case. Rather, it would have served the permissible rebuttal function of impeaching Stratton's witnesses, who had testified during its case-in-chief that the side entrances to this trail had never been closed. *See, e.g., Federal Aviation Administration v. Landy*, 705 F.2d 624, 632 (2d Cir.) (holding that testimony tending to impeach was proper rebuttal), *cert. denied*, 464 U.S. 895, 104 S.Ct. 243, 78 L.Ed.2d 232 (1983); *United States v. Windham*, 489 F.2d 1389, 1391 (5th Cir.1974) (same). This testimony plainly was not collateral but central to the issue of Stratton's negligence in failing to rope off East Meadow's side entrance. Because this testimony was highly relevant and material to impeach the credibility of defendant's employees, we hold that the district court erred in excluding it. *See Weiss*, 515 F.2d at 457–58.

## II. *The Failure To Give Jury Instructions Concerning The Season Pass*

Before the start of the ski season, Stratton sent the Pitasis a subscription form used to purchase season passes. The Pitasis completed this form and ordered season ski passes. The pass agreement was not included in the promotional material sent to the Pitasis, nor was it mailed to the Pitasis after they placed their order. Rather, the pass was presented to Pitasi for his signature while he waited on a line at the ski lodge before heading off for his first run of the season. Pitasi's pass provided in pertinent part that "[t]he pass holder will assume all risk of personal injury to himself and loss of or damage to his personal property."

Prior to the commencement of the trial, Pitasi filed a motion *in limine* to preclude introduction of the season pass into evidence at trial. The district court denied this motion and permitted the pass to be admitted into evidence without any instructions. At the close of trial, defendants moved for a directed verdict based on the season pass agreement, contending that as a matter of law Pitasi had assumed the risk of defendant's negligence. The district court denied this motion, and the defendants do not appeal this ruling.

On appeal, the Pitasis claim that the district court erred by failing to instruct the jury on what effect, if any, the season pass should have been given, and how the pass should have been construed. We agree.

■ As an initial matter, we note that the district court correctly left for the jury the question of whether the exculpatory language of the season pass issued to Pitasi precluded recovery. It is well-settled that where contract language is ambiguous the determination of the parties' intent is a question for the jury. *See Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.*, 930 F.2d 1021, 1026 (2d Cir. 1991); *Rowell v. Town School District of Canaan*, 123 Vt. 350, 189 A.2d 785, 790 (1963); *cf. Antilles Steamship Co., Ltd v. Members of the Amer. Hull Ins. Syndicate*, 733 F.2d 195, 204–05 (2d Cir.1984) (Newman, *J.*, concurring); *Douglass v. Skiing Standards, Inc.*, 142 Vt. 634, 459 A.2d 97 (1983) (holding that ski pass was unambiguous and precluded claim based on negligence). Here, Pitasi's pass did not unambiguously bar recovery where an injury was the result of a ski resort's negligence. While the jury might have concluded that Pitasi's signature on the pass prevented recovery, it might alternatively have found that the season pass signed by Pitasi merely reflected Vt.Stat.Ann. tit. 12 § 1037 (1990), which states that "a person who takes part in any sport accepts as a matter of law the dangers that inhere therein insofar as they are obvious and necessary." The latter determination would allow the Pitasis to recover for any injuries caused by Stratton's negligence in failing to alert Pitasi. Furthermore, regardless of how the language of the pass is construed, the jury might have found, if the issue had been properly presented to it, that there was no meeting of the minds because of the manner in which Stratton presented the pass to Pitasi. *See Boase v. Lee Rubber & Tire Corp.*, 437 F.2d 527, 530 (3d Cir.1970)

("The originator of the term 'adhesion contract' ... defined such agreements as those ... which, as the Romans said, resemble a law more than a meeting of the minds.") (citation omitted).

█ Although the district court did not err in admitting the pass into evidence or submitting it to the jury, it should not have done so without providing any instructions on how the language of the pass should be construed under Vermont law or what effect, if any, the pass should be given. "It is the responsibility of the trial judge to provide the jury with sufficient instruction to enable it to assess the evidence within the proper legal framework and to reach a rational verdict." *United States v. Parker*, 903 F.2d 91, 101 (2d Cir.1990). A new trial must be granted where it is clear that the jury was not adequately instructed on issues essential to the case. *See, e.g., Carvel Corp. v. Diversified Management Group, Inc.*, 930 F.2d 228, 232 (2d Cir. 1991); *EOI Electronics, Inc. v. Xebec*, 785 F.2d 391, 398 (2d Cir.1986).

In the present case we believe that a new trial must be granted because the jury was not adequately instructed, indeed it was not instructed at all, regarding the pass's construction or consequence, which were potentially dispositive in this case. This lack of instruction undoubtedly left the jury confused about the extent to which Pitasi assumed the risk of injury while skiing, and this may well have affected the jury's apportionment of liability to the detriment of Pitasi.

### III. *The Voir Dire*

The district court conducted the voir dire itself, and no attorney questioning was permitted. The Pitasis' counsel, however, requested that the district judge ask a limited number of specific questions concerning potential juror bias or fixed opinion on dispositive issues that counsel had submitted. Despite this request, the district court failed to ask potential jury members whether they or any member of their family were or had been an employee of any ski area or ski related industry. The district court also refused to ask questions submitted by Pitasi concerning whether a ski resort could be responsible for some of the risks encountered while skiing, a dispositive issue in the case. Pitasi maintains that the district court's failure to pose these questions constituted an abuse of discretion.

█ The content and quality of the voir dire are generally committed to the sound discretion of the court, and will not be disturbed absent an abuse of discretion. *Stephan v. Marlin Firearms Co.*, 353 F.2d 819, 822 (2d Cir.1965), *cert. denied,* 384 U.S. 959, 86 S.Ct. 1584, 16 L.Ed.2d 672 (1966). However, "[i]t is an abuse of discretion for the district court to refuse to probe the jury adequately for bias or prejudice about material matters on request of counsel." *Darbin v. Nourse*, 664 F.2d 1109, 1113–14 (9th Cir.1981); *see also Fietzer v. Ford Motor Co.*, 622 F.2d 281, 285 (7th Cir.1980). Although we need not reach this issue, given our resolution of the previous matters on appeal, in the interests of ensuring a more orderly retrial, we merely note that where, as here, the questions submitted by counsel are reasonable, a district judge choosing to conduct the voir dire should ask them. This is especially true where the questions seek to uncover whether a potential juror has a local bias or a fixed opinion which would be dispositive of an issue in the case.

### CONCLUSION

Based on the foregoing, the judgment of the district court is reversed and this case is remanded for a new trial consistent with this opinion.