213 P.3d 207

Kristen JOHNSON, surviving spouse of Mark Wayne Johnson, deceased, individually, and as statutory plaintiff and as natural mother and next of friend of Garrett Johnson, a minor; Mason Johnson, a minor; Kelley Johnson, a minor; and Jenna Johnson, a minor, surviving children of Mark Wayne Johnson, deceased; and Garry Johnson and Jane Johnson, husband and wife, and surviving parents of Mark Wayne Johnson, deceased, Plaintiffs/Appellants,

v.

STATE of Arizona, by and through Its DEPARTMENT OF TRANSPORTATION, Defendant/Appellee.

No. 1 CA–CV 08–0077.

Court of Appeals of Arizona, Division 1, Department A.

June 18, 2009.

Luis P. Guerra, L.L.C. By Luis P. Guerra, Phoenix, Attorneys for Plaintiffs/Appellants.

Burke, Panzarella, Rich By Thomas P. Burke, II, Elizabeth L. Fleming, Shauna B. Yoder, Phoenix, Attorneys for Defendant/Appellee.

## OPINION

BARKER, Judge.

¶ 1 In this opinion we address several issues of first impression as to subsequent remedial measures. For the reasons that follow, and those in the separately filed memorandum decision,[1] we affirm.

---

1. Arizona Rule of Civil Appellate Procedure 28(g) provides:

## Facts and Procedural History [2]

¶ 2 This is an appeal from a jury verdict against the Johnsons on their wrongful death action against the State [3] arising out of a fatal rear-end collision that occurred on U.S. Highway 60 ("U.S. 60") in December 2003. The Johnsons' decedent, Mark Johnson ("Decedent"), was driving his van westbound in the right-hand lane of U.S. 60 in the early morning when he collided with the back of a tractor trailer dump truck. The dump truck was exiting a mining pit at the Peckary Road intersection, which had a stop sign. The Arizona Department of Public Safety ("DPS") accident report stated that the dump truck driver "looked for on-coming traffic numerous times then proceeded onto the highway" and that "after traveling approximately 713 feet West bound on U.S. 60 from the stop sign, [the dump truck] was struck from behind by [Decedent's van]." A witness to the accident stated that Decedent did not brake, swerve, or take any other evasive action prior to the accident.

¶ 3 The Johnsons sued the State alleging that it negligently designed the Peckary Road intersection and failed to take reasonable measures to eliminate the dangerous conditions of the intersection. The State claimed that Decedent was comparatively negligent and that it was not liable for the Johnsons' damages.

¶ 4 The jury returned a defense verdict, and the court entered judgment in accordance with the jury's verdict. The Johnsons filed a motion for new trial, challenging various rulings by the trial court. The motion was denied. The Johnsons filed a timely notice of appeal. The Johnsons also filed a motion for relief from judgment pursuant to Arizona Rule of Civil Procedure ("Rule") 60(c). That motion was also denied by the trial court. The Johnsons then filed a timely amended notice of appeal. We have jurisdiction pursuant to Arizona Revised Statutes

("A.R.S.") section 12–2101(B), (C), (F)(1) (2003).

## Discussion

¶ 5 The Johnsons raise seven issues on appeal. In this opinion, we address only the issues related to subsequent remedial measures taken by the State after the accident. We address the remaining issues in a separate memorandum decision filed this date pursuant to Arizona Rule of Civil Appellate Procedure 28(g).

¶ 6 The record indicates that, after the Decedent's accident, the State installed a truck-crossing sign and a variable message board to warn drivers that trucks would be crossing or entering at the Peckary Road intersection. The Johnsons first argue that the placement of the signs could not be considered a subsequent remedial measure because the Arizona Department of Transportation ("ADOT") placed the warning signs without any knowledge of the accident at issue in this case. Secondly, the Johnsons argue that, even if the placement of the warning signs constituted a subsequent remedial measure, evidence about it was admissible under the "other purposes" exception to rebut the comparative negligence and "open and obvious" defenses and to impeach the State's witnesses regarding their knowledge of the alleged danger. For these reasons, the Johnsons assert that it was error to exclude such evidence. We disagree.

## 1. Can the Warning Signs Be Considered a Subsequent Remedial Measure if Not Placed in Response to the Accident at Issue?

¶ 7 Before trial, a factual dispute arose over whether ADOT actually had knowledge of Decedent's death when it decided to place warning signs near the U.S. 60/Peckary Road intersection. Multiple State employees testified that they did not know about the Dece-

---

2. The facts are presented in the light most favorable to sustaining the jury's verdict. *Evans v. Valley Radiologists, Ltd.*, 127 Ariz. 177, 179, 619 P.2d 5, 7 (1980).

3. The Johnsons sued additional parties who are not subject to this appeal.

When the court issuing a decision concludes that only a portion of that decision meets the criteria for publication as an opinion, the court shall issue that portion of the decision as a published opinion and shall issue the remainder of the decision as a separate memorandum decision not intended for publication.

dent's death at the time the decision was made to place the warning signs. One witness, however, did testify that, before the decision to place the warning signs, the State received phone calls from residents near the intersection who expressed a general safety concern about the trucks pulling out of the intersection. The Johnsons filed multiple pre-trial motions, arguing that the placement of the signs could not be considered subsequent remedial measures because ADOT placed the warning signs without any knowledge of the accident at issue in this case. The trial court did not permit the Johnsons to use evidence of subsequent remedial measures at trial, and in its ruling on the Johnsons' motion for new trial, the trial court stated:

> It is not necessary that the State have known about the specific collision involving [Decedent]. If it acted based on the realization that the intersection was unsafe, that falls within the public policy rationale for excluding evidence of subsequent remedial measures.

¶ 8 On appeal, the Johnsons argue that the trial court erred by holding that the warning signs were subsequent remedial measures, but they cite no Arizona authority to support their claim. Instead, they cite authority from other jurisdictions supporting the proposition that the concept of "remedial" implies that the "defendant must know of the prior event in order to fashion a safety measure to remedy any hazard that caused the event." *Van Gordon v. Portland Gen. Elec. Co.*, 298 Or. 497, 693 P.2d 1285, 1289 (1985); *see also* 23 Charles Alan Wright & Kenneth W. Graham, *Federal Practice and Procedure: Federal Rules of Evidence* § 5283 (Supp.2009).

¶ 9 The authority cited by the Johnsons represents only one viewpoint in a split of authority from other jurisdictions regarding the interpretation of Rule 407. One theory, which the Johnsons espouse, is that "a measure is not *remedial* if it is not taken in reaction to a specific injury or event," and therefore "notice of the injury, or at least the event causing the injury, would be required" to apply Rule 407. Mark G. Boyko & Ryan G. Vacca, *Who Knew? The Admissibility of Subsequent Remedial Measures When De-*fendants *Are Without Knowledge of the Injuries,* 38 McGeorge L.Rev. 653, 663 (2007). Another viewpoint focuses on the preventative nature of the remedial measure and excludes "evidence of a subsequent measure ... if the measure *could have prevented* the injury, regardless of whether it was taken in response to the injury or was intended to prevent similar injuries." *Id.* at 665 (footnote omitted). Yet another viewpoint focuses on the policy considerations underlying Rule 407, which are "to encourage people to take steps to increase public safety." *Id.* at 667 (internal quotation marks omitted); *see also Doe v. Johnston,* 476 N.W.2d 28, 34 (Iowa 1991) (adopting the Third Circuit's reasoning that "the policy behind the rule, which is to encourage people to take steps to increase public safety[,] ... would not be served if evidence of defendants' changed behavior could be used to prove liability just because defendant was unaware that any injury or accident had occurred.... [T]he policy underlying the rule should apply not only when the safety measures are taken in reaction to an accident, but also when they are taken merely upon discovery that change is needed" (citing *Petree v. Victor Fluid Power, Inc.,* 831 F.2d 1191, 1198 (3d Cir.1987) (citations omitted))).

■■■ ¶ 10 "Generally, we review challenges to the court's admission or exclusion of evidence for an abuse of discretion." *Felder v. Physiotherapy Assocs.,* 215 Ariz. 154, 166, ¶ 55, 158 P.3d 877, 889 (App.2007). "If the evidentiary ruling is predicated on a question of law, we review that ruling de novo." *Id.* Because the trial court on this issue "based its evidentiary ruling on substantive legal principles, we review the ruling de novo." *Yauch v. S. Pac. Transp. Co.,* 198 Ariz. 394, 399, ¶ 10, 10 P.3d 1181, 1186 (App. 2000).

■■■ ¶ 11 We construe rules of evidence in the same manner that we construe statutes, "giving effect to the plain meaning unless the language is ambiguous." *Valerie M. v. Ariz. Dep't. of Econ. Sec.,* 219 Ariz. 155, 161, ¶ 19, 195 P.3d 192, 198 (App.2008). Arizona Rule of Evidence 407 states, in pertinent part:

When, after an event, measures are taken, which if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event.

Strictly reading this text, Rule 407 applies whenever "measures are taken" "after an event." The rule does not require that the measures be "remedial to the specific event," or "taken in response to the event," or "taken in connection with the event." [4] *See* Boyko & Vacca, *supra*, at 664 ("It is worth noting that the word 'remedial' does not appear in the body of Rule 407."); *City of Phoenix v. Harnish*, 214 Ariz. 158, 163 n. 2, ¶ 20, 150 P.3d 245, 250 n. 2 (App.2006) ("The actual language of the statutes, rather than the titles or headings, is most important."). Instead, the rule contemplates the exclusion of *any* measure that "if taken previously, would have made the event less likely to occur." Ariz. R. Evid. 407. "In other words, a defendant need not know of the injury-causing event or the hazard that caused it so long as the measure *could have cured the hazard.*" Boyko & Vacca, supra, at 665 (emphasis added). If the supreme court had wanted to exclude evidence of subsequent remedial measures *only if* the measures were taken in response to the event at issue, it could have said so. It did not, so we follow the rule's clear and specific language. *State ex rel. Romley v. Superior Court (Stewart)*, 168 Ariz. 167, 169, 812 P.2d 985, 987 (1991) ("[W]hen the rule's language is not subject to different interpretations, we need look no further than that language to determine the drafters' intent. We will give the rule's language its usual, ordinary meaning unless doing so creates an absurd result." (citations omitted)).

¶ 12 In addition, adopting the rule proposed by the Johnsons would upset the underlying policy that Rule 407 was designed to implement. If knowledge of the very accident at issue was required for Rule 407 to be invoked, a potential defendant would be reluctant to make safety changes due to the possibility of potential claims about which the potential defendant is uninformed and for which the statute of limitations has not run. The policy under Rule 407 would be thwarted. We have previously recognized that the "'more impressive[] ground for exclusion rests on a social policy of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety.'" *Hallmark v. Allied Prods. Corp.*, 132 Ariz. 434, 440, 646 P.2d 319, 325 (App. 1982) (quoting Fed.R.Evid. 407, advisory committee's note) (emphasis added); *see* 1 Daniel J. McAuliffe & Shirley J. Wahl, *Arizona Practice Series: Law of Evidence* § 407 (rev. 4th 2008) ("Taking greater care, in short, ought not to be punished by adverse evidentiary consequences...."). Thus, subsequent remedial measures need not be in response to the incident at issue for Rule 407 to apply.

## 2. Does the "Other Purposes" Exception Apply?

¶ 13 The Johnsons next argue that the trial court abused its discretion by denying their request to use the subsequent remedial measures for "other purposes," including: (1) to rebut the State's defense that Decedent was comparatively negligent, (2) to rebut the State's alleged defense that any danger was "open and obvious," and (3) to impeach the State's witnesses regarding their knowledge of the alleged danger.[5]

---

4. Although the phrase "in connection with the event" is found within the first sentence of the rule's text, it relates to the prohibition of "adm[itting]" evidence of the measures during a court proceeding to prove a defendant's "culpable conduct" in the "event"; it does not modify the practice of a defendant taking "measures" "after [the] event" that "ma[k]e the event less likely to occur." *See* Ariz. R. Evid. 407 ("[E]vidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event.").

5. To the extent that the Johnsons argue that the trial court erred by not allowing evidence of the subsequent remedial measures to show feasibility, we do not address that issue because the Johnsons failed to show that (a) feasibility was controverted by the State or (b) the trial court prevented the Johnsons from impeaching with the evidence on feasibility grounds.

¶ 14 As described above, Rule 407 precludes evidence that, after an accident, a party has taken remedial measures to prevent such future accidents. However, Rule 407 also states that "[t]his rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment." Ariz. R. Evid. 407.

### a. Comparative Negligence Defense

¶ 15 The Johnsons argue that evidence of the State's subsequent remedial conduct should have been admitted to rebut the State's assertions that Decedent was comparatively at fault for the accident. They maintain that the purpose in introducing the State's subsequent measures was not to demonstrate the State's negligence but to show that Decedent was not negligent in failing to see the allegedly dangerous conditions as they existed prior to the installation of the warnings signs. There is no Arizona decision that directly addresses this issue.

¶ 16 Under Arizona law, Rule 407 prohibits admission of evidence of subsequent remedial conduct by a defendant to prove negligence or culpable conduct. In cases such as this where a plaintiff alleges that the State negligently designed and maintained a highway, a duty of ordinary care is imposed upon the State "to keep its roadways reasonably safe for travel." *Booth v. State*, 207 Ariz. 61, 66, ¶ 13, 83 P.3d 61, 66 (App.2004). However, this duty is not absolute, and the degree of reasonable care exercised by the State has its limits. *Church of Jesus Christ of Latter Day Saints v. Superior Court (Connelly)*, 148 Ariz. 261, 263, 714 P.2d 431, 433 (App.1985) ("[T]he city is not bound to provide perfect streets for travel, but only those which are reasonably safe." (internal quotation marks omitted)).

¶ 17 Pursuant to A.R.S. § 12–2505(A),[6] the comparative fault statute, the State's liability in such cases is proportionately reduced by the plaintiff's failure to exercise reasonable care in avoiding an accident. *See Bach v. State*, 152 Ariz. 145, 149, 730 P.2d 854, 858 (App.1986) ("The state has a duty to keep the streets reasonably safe; motorists have a duty to drive with reasonable care." (internal quotations and brackets omitted)). Under our comparative fault scheme, the trier of fact considers each party's negligence when assigning the percentage of fault. *See Ayala v. Olaiz*, 161 Ariz. 129, 131, 776 P.2d 807, 809 (App.1989) ("A.R.S. § 12–2505 provides for an apportionment of *damages* based on the degree of fault of the parties where the jury finds the defense of contributory negligence or assumption of risk to be applicable.").

¶ 18 Because liability arising out of an accident is apportioned according to fault, any rebuttal to a defendant's comparative negligence defense will logically imply increased negligence by that defendant.[7] *See Hightower v. Kan. City S. Ry. Co.*, 70 P.3d 835, 853 n. 33, 854 (Okla.2003) ("Due to the very nature of the comparative negligence defense, it is inherently incapable of consideration separate and apart from the negligence claim to which it relates. Thus, when the affirmative defense of comparative negligence is raised, a negligence claim and the affirmative defenses of comparative and/or contributory negligence are inextricably intertwined."). In a case raising the same issue as the one before us, the Kansas Court of Appeals reasoned as follows:

> The process of determining comparative fault, when only two parties are involved, is a "zero sum game." When negligence is moved out of the plaintiff's column, it must move into the defendant's column. Evidence that tends to exculpate plaintiff in a

---

6. Section 12–2505 states, in relevant part:

   The defense of contributory negligence or of assumption of risk is in all cases a question of fact and shall at all times be left to the jury. If the jury applies either defense, the claimant's action is not barred, but the full damages shall be reduced in proportion to the relative degree of the claimant's fault which is a proximate cause of the injury or death, if any.

7. We only address the circumstance of allocating fault between a plaintiff and a defendant. We do not consider, therefore, any impact based on the presence of a non-party or other party at fault. *See* A.R.S. § 12–2506(B) (2003).

comparative fault case places fault upon the defendant, and evidence of subsequent remedial conduct to prove negligence is prohibited [by Rule 407].

*DiPietro v. Cessna Aircraft Co.*, 28 Kan. App.2d 372, 16 P.3d 986, 991 (2000) (holding that "[e]vidence of subsequent remedial conduct to disprove a plaintiff's comparative fault is inadmissible").

¶ 19 We agree with the analysis in *DiPietro* and similarly hold that evidence of subsequent remedial measures offered to rebut a defense of comparative negligence is inadmissible because it constitutes direct proof of the defendant's alleged primary negligence. *See Readenour v. Marion Power Shovel*, 149 Ariz. 442, 448, 719 P.2d 1058, 1064 (1986) (asserting that evidence of subsequent remedial measures is "admissible for many purposes *other than direct proof of negligence*") (emphasis added); *Fasanaro v. Mooney Aircraft Corp.*, 687 F.Supp. 482, 486 (N.D.Cal. 1988) ("Plaintiff's attempt to phrase her argument for introduction of [subsequent remedial measures] as a rebuttal of [Defendant's] contributory negligence defense is purely semantic.... In other words, [plaintiff] argues that the decedent was not contributorily negligent because the defendant *was* negligent. Under Rule 407 evidence of subsequent remedial measures is not admissible to show negligence.").

¶ 20 Therefore, we find no error in the trial court's decision that the "other purposes" exception does not apply to permit the admission of subsequent remedial evidence to rebut a comparative fault assertion.

#### b. *"Open and Obvious" Considerations*

▉ ¶ 21 The State affirmatively argued during trial that the highway and intersection were properly designed to provide "a clear line of sight for hundreds and hundreds of feet" and that Decedent could have avoided the accident had he exercised due care. The Johnsons argue that this is essentially an "open and obvious" defense and that the trial court erred by not permitting them to use evidence of subsequent remedial measures to rebut it.

¶ 22 The Johnsons present the "comparative negligence" and "open and obvious" issues separately in their briefs. However, the cases cited by the Johnsons treat the "open and obvious" issue as being part of the broader comparative negligence issue. *See Michalski v. Home Depot, Inc.*, 225 F.3d 113, 121 (2d Cir.2000) ("The open and obvious nature of the condition does not necessarily negate defendant's duty, but ... the nature of such conditions would be a factor appropriately considered in the apportioning of comparative negligence when awarding damages."); *Pitasi v. Stratton Corp.*, 968 F.2d 1558, 1561 (2d Cir.1992) (noting that the plaintiff sought to use evidence of subsequent conduct "to impeach [the defendant's] witnesses and to rebut its defense that [the plaintiff] was contributorily negligent because the dangerous conditions ... were so obvious and apparent that warning signs or ropes at the trail's side entrances were unnecessary"); *Rimkus v. Nw. Colo. Ski Corp.*, 706 F.2d 1060, 1064 (10th Cir.1983) (noting that the defendant "sought to establish that the plaintiff [ ] was guilty of contributory negligence in not seeing and avoiding [the open and obvious] hazard"). Arizona case law also supports the view that the "open and obvious" nature of a condition is merely a factor to be considered in applying a broader comparative negligence theory. *See Beach v. City of Phoenix*, 136 Ariz. 601, 603–04, 667 P.2d 1316, 1319–20 (1983) (rejecting the theory that the "open and obvious nature of the condition" ends the defendant's duty to the plaintiff and stating that such conditions are relevant to both defendant's negligence and plaintiff's contributory negligence). Therefore, our analysis, *supra* ¶¶ 15–20, applies to the Johnsons' argument that the trial court erred by refusing to admit evidence of subsequent conduct to rebut the State's "open and obvious" defense. We further address the "open and obvious" issue, however, because there are additional reasons that support the trial court's decision to exclude evidence of subsequent conduct in this case.

¶ 23 The Johnsons assert that this case is analogous to *Pitasi*, which involved a skier's claim against a ski resort for injuries the skier sustained while using the resort's facilities. 968 F.2d at 1560. The *Pitasi* court held that the trial court abused its discretion

when it excluded evidence of subsequent remedial measures taken by the ski resort because it deprived the skier of the opportunity to rebut the resort's arguments that the dangerous conditions were open and obvious to the skier. *Id.* at 1561. The court in *Pitasi* focused on the fact that the subsequent remedial measures were the only evidence available to the plaintiff to "rebut a defense based upon the nature or condition of the accident scene." *Id.* at 1560–61.

¶ 24 We do not find *Pitasi*, or the related cases cited by the Johnsons, persuasive in this case because the condition of the accident scene had not substantially changed over time and because there was other evidence available to the Johnsons to rebut the State's claims that Decedent negligently failed to·recognize the "obvious" nature of the danger. Arizona law is clear that "[b]efore evidence of subsequent change may be received as relevant to a proper issue, the trial court must be satisfied ... that the plaintiff cannot establish the fact to be inferred conveniently by other proof." *Hallmark*, 132 Ariz. at 439, 646 P.2d at 324. The Johnsons acknowledge that an eyewitness specifically testified concerning the inability to see the intersection and that the "intersection's lack of visibility is further exposed in the ADOT photos and in the State's favorite exhibit, the Accident Report." Therefore, we find that another reason the trial court did not abuse its discretion by disallowing evidence of the subsequent remedial measures under the "other purposes" exception was because "other proof" was clearly available for the Johnsons to rebut the State's assertions. *Id.* ("[T]he trial judge has broad power to insure that remedial measures evidence is not improperly admitted under the guise of the 'other purpose' exception."); *see also Hightower*, 70 P.3d at 853–54 (distinguishing *Pitasi* because the possibility remained for the plaintiff to rebut the defendant's affirmative defense of comparative negligence with other evidence).

### c. Dangerous Conditions

¶ 25 The Johnsons also argue that they should have been permitted to use evidence of the subsequent remedial measures to prove the State's knowledge and recognition of the dangerous conditions and to rebut the State's argument of safety. The trial court disallowed the evidence for these purposes because it would be a "backdoor attempt[ ] to use remedial issues to establish negligence."

¶ 26 The jury instructions in this case stated that, for the Johnsons to prove that the State was negligent, they must show that "[a]n unreasonably dangerous condition existed at the intersection" and that "[t]he State knew or reasonably should have known that the condition was unreasonably dangerous." To allow the Johnsons to offer the evidence to prove the State's "knowledge and recognition of the danger" would have allowed them to explicitly prove elements of negligence with evidence of subsequent remedial measures. *See Hallmark*, 132 Ariz. at 439, 646 P.2d at 324 (prohibiting the use of this exception as a "guise"). This is the exact situation that Rule 407 prohibits. Accordingly, the trial court did not abuse its discretion by excluding the evidence.

### Conclusion

¶ 27 For the foregoing reasons, and those in the accompanying memorandum decision, we affirm.

CONCURRING: SHELDON H. WEISBERG, Presiding Judge and MARGARET H. DOWNIE, Judge.