Argued and submitted March 7, reversed and remanded
to Court of Appeals with instructions April 26, 1982

## VAN GORDON,
*Respondent, Petitioner on Review,*

*v.*

## PORTLAND GENERAL ELECTRIC COMPANY,
*Appellant, Respondent on Review,*

## PORTLAND GENERAL ELECTRIC COMPANY,
*Appellant,*

*v.*

## BARKER et al,
*Respondents.*

(TC A70902-00508, CA 19901, SC 29098)

662 P2d 714

Janet C. Neuman, Portland, argued the cause for peti-
tioner on review. With her on the petition for review and

briefs were Barbee B. Lyon and Tonkon, Torp, Galen, Marmaduke & Booth, Portland.

John R. Faust, Jr., Portland, argued the cause and filed the briefs for respondent on review. With him on the briefs were Schwabe, Williamson, Wyatt, Moore & Roberts, Buell, Black, Gates & Dupuy, and James K. Buell, Portland.

Margaret H. Leek Leiberan, Portland, filed a brief for respondents Barker. With her on the brief was Lang & Smith, Portland.

Before Lent, C. J., Peterson, Campbell, Roberts, Carson and Jones, Justices.

CAMPBELL, J.

**CAMPBELL, J.**

Plaintiff Brock Van Gordon was burned in the hot water at Austin Hot Springs, a park owned and operated by Portland General Electric. He contends that PGE was liable under a statute which exonerated the owners of recreational land from liability for negligent conduct but retains liability for injuries arising from reckless conduct. He contends PGE was reckless in failing to warn of the dangers at this park. A jury agreed and awarded damages. PGE appealed and the Court of Appeals reversed, holding that as a matter of law PGE's behavior was not reckless. We disagree and remand to the Court of Appeals for disposition of the remaining issues.

Austin Hot Springs is a park located on the upper Clackamas River. The public is invited to use this facility without charge. There was evidence that as many as 6,000 people accept this invitation every year. PGE provides toilets, picnic tables, fire pits, garbage cans and parking. The hot springs themselves are the major attraction. Hot water percolates out of the riverbed and the banks. People move rocks to encircle the hot water coming up from the bed of the river in order to form small pools. This allows some control in the mixture of the hot water with the cold river water. The pools formed in this manner vary in temperature from comfortably warm to as hot as 190 degrees Fahrenheit. There was testimony that water at this temperature can cause severe burns in less than one second. At the time of the accident there were three signs saying "hot water" between the main parking lot and the principal bathing area of the river. There was evidence that PGE had knowledge of previous burns caused by the hot water.

On May 20, 1978, Brock Van Gordon, then two years old, went on a picnic with his grandparents and his four-year-old brother. The grandparents realized that the Austin Hot Springs were in this area, but had never been there before. They drove into the park by a secondary entrance to the west of the main entrance. This road had no sign indicating the name of the park.

After they had their lunch in an area that had a picnic table and a fire pit, the grandmother took Brock and

his brother for a walk. They came to the Clackamas River, evidently west of the main parking area. The children wanted to wade, so after testing the water, their grandmother allowed them to do so. Brock climbed on a rock that was part of the rim of a warm pool in which he was wading. He slipped and fell backward into a neighboring pool. This pool was extremely hot, and Brock's legs and feet were scalded before his grandmother was able to lift him out of the water. He was burned severely enough to require hospitalization. The grandmother testified that although she could see steam rising on the other side of the river, she did not know that the water on this side of the river was hot rather than warm. She testified that because of the route she followed from their picnic area to the river, the three warning signs were not visible.

Brock filed suit, charging PGE with reckless failure to warn. PGE filed a third party action against Brock's grandparents, alleging they were negligent in their supervision of the child. The jury returned a verdict against PGE; it did not find the grandparents liable for the damages.[1]

PGE appealed, claiming six errors: failure to grant either the motion to dismiss or the motion for a directed verdict; failure to exclude evidence of new signs as inadmissible post-accident remedial action; admission of evidence of the cost of an attendant; failure to admit a 1949 letter from a governmental agency; and failure to give two requested instructions regarding the state policy concerning immunity of landowners as indicated by ORS 105.660 and ORS 390.010. The Court of Appeals, in a 5-4 decision, held that the trial court erred in failing to grant PGE's motion to dismiss or its motion for a directed verdict, holding that as a matter of law PGE's actions did not amount to recklessness. The majority opinion did not discuss the other alleged errors.

Plaintiff alleges that PGE was reckless in that it failed to warn visitors to the hot springs of the possible

---

[1] PGE appealed from the judgment of the trial court. The grandparents submitted a brief in the Court of Appeals, stating it ws unclear to them if PGE was appealing that part of the judgment that found the grandparents were not liable. Evidently PGE was not and the question of the grandparents' alleged negligence is not before us now. ·

danger of extremely hot water. PGE contends that as a matter of law its behavior was not reckless, and the trial court erred in refusing to grant its motion to dismiss and its motion for a directed verdict. We disagree.

The controlling statutes are:

ORS 105.665:

"Except as otherwise provided in ORS 105.675:

"(1)   An owner of land owes no duty of care to keep the land safe for entry or use by others for any recreational purpose or to give any warning of a dangerous condition, use, structure or activity on the land to persons entering thereon for any such purpose.

"(2)   An owner of land who either directly or indirectly invites or permits any person to use his land for any recreational purpose without charge does not thereby:

"(a)   Extend any assurance that the land is safe for any purpose;

"(b)   Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed; or

"(c)   Assume responsibility for or incur liability for any injury, death or loss to any person or property caused by an act or omission of that person."

ORS 105.675:

"Nothing in ORS 105.655 to 105.680 limits in any way any liability of an owner of land which may otherwise exist:

"(1)   For his reckless failure to guard or warn against a dangerous condition, use, structure or activity on the land;"

The legislative policy, as declared by ORS 105.660, indicates that this bill, SB 294, was enacted in 1971 to encourage landowners to open their lands to the public without charge. One obvious way to accomplish this was to limit the landowners' potential liability. The statutory plan that evolved excuses landowners from liability for damages caused by negligence if they open their lands without charge, but retains liability for damages caused by reckless failure "to guard or warn against a dangerous condition, use, structure or activity on the land."

■ Initially, the word "malicious" was used in place of "reckless." After an explanation by former Chief Justice Arno Denecke that "reckless" is a lower level of fault, and a comment that "malicious" implies intent, the word "reckless" was substituted for "malicious"[2] and this is the word that appears in ORS 105.675(1). Thus the legislature struck a balance by eliminating negligence as a basis for liability in order to encourage landowners to open their lands, but retained some remedies for the public for injuries suffered because of a landowner's failure to warn against a dangerous condition. We believe that the legislature intended that "reckless" be given the same meaning that it had been given in previous decisions from this court. There is no indication that the word should be construed in any other fashion. It is clear that the legislature intended that landowners not be granted total immunity.

The trial court instructed the jury on the elements of recklessness as follows:

> "PGE cannot be found liable in this case unless Plaintiff proves by a preponderance of the evidence that the conduct of PGE in the operation of Austin Hot Springs was willful, wanton or reckless. Defendant's conduct could only be found willful, wanton or reckless if it was apparent or reasonably should have been apparent to the Defendant that the result was likely to prove disastrous to the Plaintiff, and he [sic] acted with such an indifference toward or utter disregard of such a consequence that it can be said he [sic] was willing to perpetrate it.

> "The elements necessary to characterize an injury as wantonly or willfully inflicted are: (One) knowledge of the situation requiring the exercise of ordinary care and diligence to avert injury to another; (two), ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand; and (three), the omission to use such care and diligence to avert the threatened danger when, to the ordinary mind, it must be apparent that the result is likely to prove disastrous to another."

PGE requested this instruction. It is based on language from *Falls v. Mortensen,* 207 Or 130, 138, 295 P2d 182 (1956) and *Hogg v. Clatsop County,* 46 Or App 129, 133, 610 P2d 1248 (1980).

---

[2] Minutes, House Natural Resources Subcommittee, May 19, 1971.

The parties in this case drew their own battle line based upon the three prong test from *Falls v. Mortensen, supra,* set forth in the above instruction. The test includes the elements of "willful" and "wanton" conduct which are not a part of ORS 105.675(1).

The correct test is stated in *Williamson v. McKenna,* 223 Or 366, 394-395, 354 P2d 56 (1960), and *Falls v. Mortensen, supra,* at 136-137, from Restatement (Second) of Torts, § 500 (1965):

"Reckless Disregard of Safety Defined

"The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent."

If there is a retrial, the test of Restatement (Second) of Torts, § 500 (1965) should be applied. This test defines "reckless," and the issue is not confused by the concepts of "wilfull" or "wanton."

Our previous case law requires that the jury must be the decision maker if there is any evidence by which a jury could conclude that behavior is reckless. *Wootten v. Dillard,* 286 Or 129, 136, 592 P2d 1021 (1979). Applying that test to the present case, we find that a jury could find evidence of the components of recklessness from the evidence presented. Viewed most favorably to plaintiff, the evidence established: PGE knew that the water temperatures in the pools varied and sometimes were dangerously high; PGE knew that a dangerously hot pool could be adjacent to a moderately warm pool, as happened in this case; it knew that people, unaware of the dangerously high temperatures of some of the pools, had been burned before; this danger existed because visitors were unaware that the pools varied so widely in temperature, and some were dangerously hot; this danger could have been eliminated by educating the public; PGE provided three small warning signs that stated "hot water;" these signs were only visible to people who parked in the main parking area and walked

to the river from there; for people in plaintiff's position, who entered the park by a secondary road and approached the river from a direction other than from the main parking lot, there was no warning whatsoever that the water was hot; PGE knew people used this alternative entrance; the company encouraged the use of this entrance by providing toilets, fire pits and picnic tables in this area, but it provided no warnings for people arriving at the river from this approach. A jury could have concluded it was obvious that PGE could have posted more signs, so that people using an alternative approach to the river would receive some warning.

Because a jury could find that PGE knew about the dangerous conditions in some parts of the river, and knew about a reasonable alternative approach to the river, the jury could conclude that neglecting to post warning signs visible from this approach to the river was reckless. Proof of recklessness was sufficient to go to the jury and to support the verdict.

PGE argues that proof of subjective willful or knowing conduct is required for a finding of recklessness. This contention was rejected over 20 years ago in *Williamson v. McKenna,* 223 Or 366, 397, 354 P2d 56 (1960).

Because the Court of Appeals decided that PGE's conduct was not reckless as a matter of law, the majority did not reach any other questions. We hold that the allegation of reckless conduct was properly submitted to the jury, and reverse and remand to the Court of Appeals for consideration of the other alleged errors claimed by PGE.

Reversed and remanded to the Court of Appeals.