Argued and submitted September 5, 1984, reversed and trial court judgment reinstated
January 15, 1985

# VAN GORDON,
*Petitioner on review,*

*v.*

# PORTLAND GENERAL ELECTRIC COMPANY,
*Respondent on review.*

# PORTLAND GENERAL ELECTRIC COMPANY,
*Third-Party Plaintiff - Appellant,*

*v.*

# BARKER et al,
*Third-Party Defendants - Respondents.*

(CC A7902-00508; CA 19901; SC S30613)

693 P2d 1285

Janet C. Neuman, Portland, argued the cause for petitioner on review. With her on the petition were John E. Frohnmayer, Barbee B. Lyon and Tonkon, Torp, Galen, Marmaduke & Booth, Portland.

John R. Faust, Jr., of Schwabe, Williamson, Wyatt, Moore & Roberts, Portland, argued the cause for respondent on

review. With him on the response to the petition was James K. Buell, of Buell, Black & Dupuy, Portland.

JONES, J.

**JONES, J.**

This case is before us on review for the third time. Our review is restricted to the issue of whether evidence offered by plaintiff of a change in language of warning signs posted after an "event"[1] constituted evidence of subsequent remedial measures.

Plaintiff Brock Van Gordon was burned in the hot water at Austin Hot Springs, a park owned and operated by Portland General Electric (PGE) on May 20, 1978. The case has been in litigation since February 7, 1979. Plaintiff alleged PGE was reckless in failing to warn of the dangers at this park. A jury agreed and awarded damages. The facts of this case were set out in our first review of the case, *Van Gordon v. PGE Co.,* 294 Or 761, 662 P2d 714 (1983), which we shall call *Van Gordon I:*

> "Austin Hot Springs is a park located on the upper Clackamas River. The public is invited to use this facility without charge. There was evidence that as many as 6,000 people accept this invitation every year. PGE provides toilets, picnic tables, fire pits, garbage cans and parking. The hot springs themselves are the major attraction. Hot water percolates out of the riverbed and the banks. People move rocks to encircle the hot water coming up from the bed of the river in order to form small pools. This allows some control in the mixture of the hot water with the cold river water. The pools formed in this manner vary in temperature from comfortably warm to as hot as 190 degrees Fahrenheit. There was testimony that water at this temperature can cause severe burns in less than one second. At the time of the accident there were three signs saying 'hot water' between the main parking lot and the principal bathing area of the river. There was evidence that PGE had knowledge of previous burns caused by the hot water.

> "On May 20, 1978, Brock Van Gordon, then two years old, went on a picnic with his grandparents and his four-year-old brother. The grandparents realized that the Austin Hot Springs were in this area, but had never been there before. They drove into the park by a secondary entrance to the west

---

[1] OEC 407 uses the word "event" to describe what caselaw and commentary refer to as the "accident." Both words are used to mean an incident which causes harm to the plaintiff. Insofar as applying the rule of evidence is concerned, the proper word is "event."

of the main entrance. This road had no sign indicating the name of the park.

"After they had their lunch in an area that had a picnic table and a fire pit, the grandmother took Brock and his brother for a walk. They came to the Clackamas River, evidently west of the main parking area. The children wanted to wade, so after testing the water, their grandmother allowed them to do so. Brock climbed on a rock that was part of the rim of a warm pool in which he was wading. He slipped and fell backward into a neighboring pool. This pool was extremely hot, and Brock's legs and feet were scalded before his grandmother was able to lift him out of the water. He was burned severely * * *. The grandmother testified that although she could see steam rising on the other side of the river, she did not know that the water on this side of the river was hot rather than warm. She testified that because of the route she followed from their picnic area to the river, the three warning signs were not visible." 294 Or at 763-64.

As mentioned, plaintiff alleged that PGE was reckless in that it failed to warn visitors to the hot springs of the possible danger of extremely hot water. In *Van Gordon I,* we held that the allegation of reckless conduct against PGE was properly submitted to the jury after defining "reckless" conduct as set forth in the Restatement (Second) Torts § 500 (1965), which reads:

"Reckless Disregard of Safety Defined

"The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent."

In his effort to prove that PGE was reckless in failing to properly warn the public of the danger of the hot water, thereby creating "an unreasonable risk of physical harm to another," the plaintiff offered in evidence a letter from a member of the public who had been burned at Austin Hot Springs and who emphatically warned PGE of the danger of the hot water to children and pets. This letter was written some time before Brock Van Gordon was injured. Additional evidence showed PGE had actual notice prior to the Van

Gordon accident that two children had received burns. As this court mentioned in *Van Gordon I,* the plaintiff also offered evidence that before young Van Gordon was burned

> "* * * PGE knew that the water temperatures in the pools varied and sometimes were dangerously high; PGE knew that a dangerously hot pool could be adjacent to a moderately warm pool, as happened in this case; * * *" 294 Or at 767.

and that

> "* * * PGE provided three small warning signs that stated 'hot water;' these signs were only visible to people who parked in the main parking area and walked to the river from there; for people in plaintiff's position, who entered the park by a secondary road and approached the river from a direction other than from the main parking lot, there was no warning whatsoever that the water was hot; PGE knew people used this alternative entrance; the company encouraged the use of this entrance by providing toilets, fire pits and picnic tables in this area, but it provided no warnings for people arriving at the river from this approach. * * *" 294 Or at 767-68.

We concluded *Van Gordon I* by saying that because a jury could find that PGE knew about the dangerous conditions in some parts of the river, and knew about the alternative approach to the river, the jury could conclude that neglecting to post warning signs visible from the approach to the river used by Brock Van Gordon's grandmother was reckless. We reversed the Court of Appeals decision that PGE was not reckless as a matter of law. We then remanded the case to the Court of Appeals for consideration of the other alleged errors claimed by PGE.

After that remand, the Court of Appeals found that the plaintiff's offered evidence of subsequent remedial measures was erroneously received and ordered a new trial. *Van Gordon v. PGE,* 64 Or App 135, 667 P2d 532 (1983).

We again granted review and in *Van Gordon II* we remanded the case to the Court of Appeals to apply the new evidence code rule, OEC 103, to determine whether the evidence received was prejudicial. *Van Gordon v. PGE Co.,* 295 Or 811, 620 P2d 1026 (1983) *(Van Gordon II).* On remand, the Court of Appeals found the error was prejudicial. *Van Gordon v. PGE Co.,* 67 Or App 290, 677 P2d 739 (1984). Now for the third time we have granted review, this time to decide whether

the evidence offered by plaintiff was evidence of subsequent remedial measures within the meaning of OEC 407 and its predecessor law and, if so, whether any error was prejudicial.

At the time of the injury, PGE maintained three signs that read simply "HOT WATER" and were visible from the main access route to the hot springs but not from the route used by plaintiff and his grandmother. The new signs read:

"CAUTION
HOT WATER
SOME WATER & ROCK TEMPERATURES
IN THIS AREA ARE HIGH ENOUGH TO
CAUSE BURNS"

and

"ACTIVITIES OF CHILDREN & PETS
SHOULD BE MONITORED CLOSELY"

PGE argues that evidence of the change in the language of the signs was inadmissible under the rule excluding evidence of subsequent remedial measures.

This rule was adopted in Oregon as a part of the new evidence code. The text of OEC 407 reads:

"When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment."

Although the rule was not in effect at the time of the Van Gordon accident, it facilitates our discussion because, as stated in the legislative commentary, the rule, which is identical to FRE 407, merely restates decisional law in Oregon. *Phipps v. Air King Manufacturing Corp.*, 263 Or 141, 501 P2d 790 (1972); *Rich v. Tite-Knot Pine Mill*, 245 Or 185, 421 P2d 370 (1960).

In *Rich v. Tite-Knot Pine Mill, supra,* we said:

"* * * It is the rule in this state, and in most other jurisdictions that common law negligence may not be proved by the introduction of evidence that subsequent to the accident in question defendant made improvements or repairs to

the instrumentality that caused the injury. * * *" 245 Or at 199 (footnotes omitted).

The commentary reflects the rationale for the rule:

"The first sentence of the rule incorporates conventional doctrine excluding evidence of subsequent remedial measures as proof of fault. The doctrine rests on two grounds. The first is that a subsequent remedial measure is not in fact an admission, because such conduct is also consistent with injury by mere accident or by operation of contributory negligence. However, under a liberal theory of relevancy this ground alone would not support exclusion, as the inference of culpable conduct is still possible. The second and stronger ground for exclusion is a social policy of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety. Courts have applied this principle to exclude evidence of subsequent repairs, installation of safety devices, changes in company rules and discharge of employes; the language of the rule is broad enough to encompass all such measures. See Falknor, 'Extrinsic Policies Affecting Admissibility,' in 10 Rutgers L Rev 574, 590 (1956); McCormick, *Evidence* section 275 at 666 (2d ed 1972)." Legislative Commentary to OEC 407, Kirkpatrick, Evidence 117-18 (1982).

The first rationale for the rule is that the subsequent repair is not in fact an admission or in any event such conduct has low probative value on a relevancy scale. The second rationale for the rule is that of public policy, encouraging safety measures to be undertaken after accidents.

■ There are two basic reasons why the rule does not apply in this case: First, the plain language of the rule which, as mentioned, restates existing Oregon law, provides "when, after an event, measures are taken which, if taken previously, would have made the event less likely to occur." In the present case, the posting of the new signs would not have prevented the Van Gordon accident, nor made it less likely to occur. Had the new signs with the new language been posted before Brock Van Gordon was burned, the new signs would not have made the accident less likely to occur because the uncontroverted evidence showed that the location of the signs made it impossible for Brock Van Gordon's grandmother to read them. She was on a different path leading to the hot springs and would not have been able to read the signs. Thus, the posting of the new signs fails to qualify as a subsequent safety measure under

the basic definition of OEC 407. The new signs were not a remedy at all as to the Van Gordon accident.

Second, the so-called "subsequent remedial measures" rule does not apply because there was no evidence presented by the plaintiff or PGE that these new signs were erected because of the injury to the plaintiff. The testimony of a PGE employe was that the three existing signs were not in keeping with the forest environment. He asserted the white signs stenciled with red letters were not rustic looking so the new signs were erected "to make them more aesthetically pleasing." In addition to the fact that the replacement of the signs had no relation to the event of plaintiff's injury, there was no evidence that PGE even knew of plaintiff's injury at the time the new signs were erected. Brock Van Gordon was injured on May 20, 1978. In September, 1978, the new signs were erected. PGE did not learn of Brock Van Gordon's injury until November, 1978. The new signs cannot be considered remedial safety measures in response to the Van Gordon accident if PGE did not know of the injury or its circumstances. In other words, a defendant must know of the prior event in order to fashion a safety measure to remedy any hazard that caused the event. The evidence is uncontroverted that new signs were not safety measures designed to remedy conditions that caused Brock Van Gordon's injury. The "event" referred to in the rule is the incident which caused the harm to the plaintiff. The rule does not apply in this case because the new signs were not an aftermath of the accident.

As pointed out by Professors Wright and Graham in their exhaustive treatise on federal evidence, where a defendant undertakes a remedial measure after an accident

"* * * but without any knowledge that it had taken place, it is difficult to see how the action could be construed as an admission of negligence with respect to the particular accident and the decision to make the change could not have been affected by fear of liablity to the instant plaintiff. * * * [T]he word 'after' should be read to require some causal relationship between the event and the remedial measure * * *. [T]he Model Code, which claims to codify the common law, requires a causal relationship. If Rule 407 were to be read similarly, this would mean that exclusion would not be required where the motivation for the remedial measure was not the prevention of a recurrence of the accident in issue. * * *" 23 Wright &

Graham, Federal Practice and Procedure: Evidence § 5283, 104-05 (1980) (footnotes omitted).

■ The evidential doctrine of "subsequent remedial measures" and OEC 407 do not require exclusion of the evidence because the motivation for the remedial measure was not the prevention of a recurrence of the Van Gordon accident. PGE did not know of the accident and was motivated to change the signs simply for aesthetic reasons. The new signs did not reflect hindsight gained from the Van Gordon accident.

■ If the evidence was not properly excluded as a subsequent remedial measure, under what theory was it admissible? A holding that the new signs were not inadmissible because of the subsequent remedial repair rule does not make them automatically admissible. The evidence concerning the new signs must possess some independent relevance. These signs did possess some independent relevance because they demonstrated not only that PGE knew of the hot water, which was obvious, but also that PGE knew of the risk of hot water burns to children. The erection of the signs was close enough in time to the accident to allow the inference that PGE, at the time of the injury, was aware of the hazards that were the subject of the signs' cautionary message. This inference alone would support the admissibility of the new signs.[2]

■■ The Restatement definition of recklessness which we adopted in *Van Gordon I* requires the plaintiff prove that the defendant knew or had reason to know that its conduct created an unreasonable risk to others. The signs, along with substantial other evidence, tended to show that PGE knew of the danger and knew of it before the Van Gordon accident. Therefore, the jury was entitled to infer that knowledge as portrayed by the signs was acquired prior to the time Brock Van Gordon was scalded in PGE's Austin Hot Springs and that PGE was reckless in failing to warn the plaintiff of the known danger.

The Court of Appeals is reversed and the trial court judgment is reinstated.

---

[2] Other evidence showed that PGE received a letter warning of the dangers cautioned against in the signs and that PGE had actual notice that two other children had been burned at the same site sometime before the Van Gordon accident.