SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| KRISTEN JOHNSON, surviving spouse of MARK WAYNE JOHNSON, deceased, individually, and as statutory plaintiff and as natural mother and next of friend of GARRETT JOHNSON, a minor; MASON JOHNSON, a minor; KELLEY JOHNSON, a minor; and JENNA JOHNSON, a minor, surviving children of MARK WAYNE JOHNSON, deceased; and GARRY JOHNSON and JANE JOHNSON, husband and wife, and surviving parents of MARK WAYNE JOHNSON, deceased,<br><br>　　　　Plaintiffs/Appellants,<br><br>　　　　　　v.<br><br>STATE OF ARIZONA, by and through its Department of Transportation,<br><br>　　　　Defendant/Appellee. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Arizona Supreme Court<br>No. CV-09-0267-PR<br><br>Court of Appeals<br>Division One<br>No. 1 CA-CV 08-0077<br><br>Maricopa County<br>Superior Court<br>No. CV2004-017564<br><br><br>**O P I N I O N** |

Appeal from the Superior Court in Maricopa County
The Honorable Thomas Dunevant, III, Judge

**AFFIRMED**

_____

Opinion of the Court of Appeals, Division One
222 Ariz. 58, 213 P.3d 207 (App. 2009)

**VACATED**

_____

LUIS P. GUERRA LLC                                                    Phoenix
　　　By　Luis P. Guerra

And

LAW OFFICES OF CHARLES M. BREWER LTD                    Phoenix
     By    Charles M. Brewer

And

LAW OFFICES OF DAVID L. ABNEY                           Phoenix
     By   David L. Abney
Attorneys for Kristen Johnson, Mark Wayne Johnson, Garrett
Johnson, Mason Johnson, Kelley Johnson, Jenna Johnson, Garry
Johnson, and Jane Johnson

BURKE PANZARELLA RICH                                   Phoenix
     By    Thomas P. Burke, II
           Shauna B. Yoder
           Elizabeth L. Fleming
Attorneys for State of Arizona and Arizona Department of
Transportation
_____

**P E L A N D E R**, Justice

¶1       Arizona Rule of Evidence 407 generally excludes evidence of "measures" taken "after an event" to prove a party's negligence or culpability "in connection with the event."  We hold that Rule 407 applies even if the party took such measures without knowledge of, or for reasons unrelated to, the prior event.  We also hold that the trial court did not err in finding that the evidence of subsequent measures was not offered for "another purpose."

**I**

¶2       This wrongful death action arose from a collision in which decedent Mark Johnson, while driving westbound on U.S.

2

Highway 60, struck the rear end of a dump truck.[1]  Before the accident, the truck driver exited a mining pit, stopped at the Peckary Road intersection, and turned onto the highway.  He traveled approximately seven hundred feet before decedent's vehicle hit his truck.  An eyewitness stated the decedent made no attempt to stop, swerve, or slow down before the collision.

¶3      The decedent's surviving spouse, Kristen Johnson, sued the State, alleging it had negligently designed and maintained the Peckary Road intersection.  The State denied any negligence and alleged that the decedent was comparatively at fault and that the accident was not intersection-related.

¶4      Johnson unsuccessfully sought to introduce evidence at trial that, after the accident, the State had posted a truck-crossing sign and allowed the mining company to install a variable message board near the Peckary Road intersection.  She argued those signs were not "subsequent remedial measures" under Rule 407 because the State installed them without knowledge of, and not in response to, the decedent's accident.  She also argued that, even if the measures were remedial, the rule did not preclude admission of this evidence for "another purpose" – to rebut the State's claims that the decedent was comparatively

---

[1]      We view the facts in the light most favorable to upholding the jury's verdict.  *Hutcherson v. City of Phoenix*, 192 Ariz. 51, 53 ¶ 13, 961 P.2d 449, 451 (1998).

3

negligent and that the roadway conditions were open and obvious, and to prove the State's knowledge of the dangerous intersection.

¶5 The trial court ruled that the evidence of subsequent signage "is not admissible merely because the State in this case denies that the intersection was unsafe," finding impermissible any "backdoor attempt[] to use remedial measures to establish negligence [in] not having installed [the signs] earlier." The jury returned a verdict in favor of the State. The trial court denied Johnson's motion for new trial, ruling that Rule 407 applied even if the State had not known of the decedent's accident when the signs were installed.

¶6 The court of appeals affirmed, holding that "subsequent remedial measures need not be in response to the incident at issue for Rule 407 to apply." *Johnson v. Ariz. Dep't of Transp.*, 222 Ariz. 58, 62 ¶ 12, 213 P.3d 207, 211 (App. 2009). The court further concluded that the trial court did not abuse its discretion in rejecting Johnson's efforts to admit the evidence for "another purpose" under Rule 407. *Id.* at 62–65 ¶¶ 13–26, 213 P.2d at 211–14.

¶7 We granted review to address issues of statewide importance and first impression in Arizona relating to Rule 407. This Court has jurisdiction pursuant to Article 6, Section 5(3) of the Arizona Constitution and Arizona Revised Statutes section

4

12-120.24 (2003).

## II

¶8    Arizona Rule of Evidence 407 provides:

> When, after an event, measures are taken, which if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

¶9    The rule seeks to "encourage remedial measures by freeing the defendant from concern that such steps might be used against him as an admission by conduct." *Readenour v. Marion Power Shovel*, 149 Ariz. 442, 445, 719 P.2d 1058, 1061 (1986). "The limitation provided by Rule 407 is not based so much upon a lack of relevancy as it is upon the policy decision to promote changes which decrease accidents." *Id.* at 446, 719 P.2d at 1062; *see also Hallmark v. Allied Prods. Corp.*, 132 Ariz. 434, 440, 646 P.2d 319, 325 (App. 1982) (noting the rule reflects "a social policy of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety" (quoting Fed. R. Evid. 407 advisory committee's notes)); 1 Joseph M. Livermore, et al., *Arizona Practice Series: Law of Evidence* § 407 (Daniel J. McAuliffe & Shirley J. Wahl eds., rev. 4th ed. 2008) ("Taking greater care, in short, ought not to be

5

punished by adverse evidentiary consequences, and that is the proposition underlying Rule 407."). We review de novo issues relating to interpretation and application of the rule. *State v. Hansen*, 215 Ariz. 287, 289 ¶ 6, 160 P.3d 166, 168 (2007).

¶10    Johnson argues that evidence of post-injury changes should be excluded under Rule 407 only if the defendant knew about an injury and made changes in response to it. Otherwise, she argues, the measures are not "remedial" within the meaning of the rule's title, "Subsequent Remedial Measures."

¶11    There is nothing inherent in the word "remedial," however, that presupposes knowledge of a prior accident by one undertaking repairs; a dangerous condition is remedied by subsequent measures even if the repairer is not aware that the condition has already caused an injury. Further, Rule 407 does not on its face require a causal relationship between the measures and the event, only that the measures were taken "after" the event and "would have made the event less likely to occur" if they had been taken before. *See Kaczmarek v. Allied Chem. Corp.*, 836 F.2d 1055, 1060 (7th Cir. 1987); *cf*. *City of Phoenix v. Harnish*, 214 Ariz. 158, 163 n.2, ¶ 20, 150 P.3d 245, 250 n.2 (App. 2006) (a statute's language is more important than its title or heading).

¶12    We find similarly unpersuasive Johnson's argument that the rule's policy of encouraging safety improvements is not

furthered when defendants act without knowledge of the event in question and, thus, without awareness of their potential liability. Although defendants who improve safety without knowledge of previous accidents may not be deterred by the risk of liability to a particular claimant, they may nonetheless be deterred by the risk of potential liability to unknown claimants if subsequent measure evidence were routinely admitted when measures are taken without knowledge of previous injuries. *See Doe v. Johnston*, 476 N.W.2d 28, 34 (Iowa 1991) ("[T]he policy underlying the rule should apply not only when the safety measures are taken in reaction to an accident, but also when they are taken merely upon discovery that change is needed." (citing *Petree v. Victor Fluid Power, Inc.*, 831 F.2d 1191, 1198 (3d Cir. 1987))).

¶13 In support of her position, Johnson relies on an Oregon case in which the plaintiff was badly burned after accidentally falling into hot springs on the defendant's land. *Van Gordon v. Portland Gen. Elec. Co.*, 693 P.2d 1285, 1286-87 (Or. 1985). The plaintiff introduced evidence at trial that the defendant had installed additional warning signs after the accident. *Id.* at 1288. The Oregon Supreme Court held that the evidence was not covered by that state's Rule 407 (virtually identical to Arizona's Rule 407), reasoning that the newly posted signs would not have made the plaintiff's accident less

7

likely to occur because he had entered the hot springs area from a different path than the one on which the new signs were placed. *Id.* at 1289.

¶14    In addition, the court found Rule 407 inapplicable because, before posting the signs, the defendant "did not know of the accident and was motivated to change the signs simply for aesthetic reasons," not in response to the plaintiff's accident. *Id.* at 1290. The court concluded that "a defendant must know of the prior event in order to fashion a safety measure to remedy any hazard that caused the event." *Id.* at 1289; *see also* 23 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5283 (1980) ("[I]t is difficult to see how [remedial measures taken without knowledge of the accident] could be construed as an admission of negligence with respect to the particular accident and the decision to make the change could not have been affected by fear of liability to the instant plaintiff.").

¶15    We disagree with this dictum in *Van Gordon*, as did the Iowa Supreme Court in *Johnston*. *See* 476 N.W.2d at 34. As that court observed, Rule 407's "policy would not be served if evidence of defendants' changed behavior could be used to prove liability just because defendant was unaware that any injury or accident had occurred." *Id.; see also Bush v. Michelin Tire Corp.*, 963 F. Supp. 1436, 1449 (W.D. Ky. 1996) (language of

Federal Rule of Evidence 407 "does not go to Defendant's intent in adopting the later measures" but "simply asks whether the later measures could have prevented the earlier accident"); *Webb v. CSX Transp., Inc.*, 615 S.E.2d 440, 448 (S.C. 2005) (rejecting "view of Rule 407 . . . that only measures taken in direct response to the accident qualify for exclusion" because "this narrow interpretation ignores the literal language of the rule"); *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 88 (Tenn. 2008) (defendant's clearing of vegetation at railroad crossing after fatal accident was "a subsequent remedial measure" because "it corrected an allegedly dangerous condition and made the crossing safer for future motorists," even though "the clearing was carried out pursuant to corporate policy" rather than in response to the accident).

¶16     In sum, we hold that Rule 407 requires the exclusion of evidence of subsequent measures to prove a party's negligence or culpable conduct, even when such measures are taken without specific knowledge of the accident in question. Because the evidence of the State's post-accident signage fell within Rule 407, Johnson was not permitted to introduce the evidence unless it was "offered for another purpose." Ariz. R. Evid. 407. We next address that issue.

### III

¶17     Although Rule 407 excludes evidence of subsequent

9

measures to prove negligence or culpability, the rule does not require exclusion of such evidence "when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment." Ariz. R. Evid. 407. Here, the State did not contest its ownership and control of Highway 60 or the feasibility of installing warning signs at or near the Peckary Road intersection. But Johnson argues that evidence of the State's subsequent measures should have been admitted to "(a) impeach the adverse witnesses; (b) rebut the argument that the intersection was faultless; and (c) fight the defense of contributory negligence." We review a trial court's ruling on the admissibility of evidence under Rule 407 for abuse of discretion. *Robles v. Shoreside Petroleum, Inc.*, 29 P.3d 838, 845 (Alaska 2001); *cf. Gemstar Ltd. v. Ernst & Young*, 185 Ariz. 493, 506, 917 P.2d 222, 235 (1996) (relating to Arizona Rule of Evidence 403).

¶18     Courts have differed on whether evidence of subsequent measures should be admissible to rebut a defendant's denial of fault or allegations of a plaintiff's contributory negligence. Some courts have allowed admission of such evidence for those or similar purposes. *See, e.g.*, *Pitasi v. Stratton Corp.*, 968 F.2d 1558, 1560-61 (2d Cir. 1992) (admitting evidence of ski slope operator's post-accident signage to rebut contributory negligence defense "based upon the nature or condition of the

accident scene"); *Rimkus v. Nw. Colo. Ski Corp.*, 706 F.2d 1060, 1063-66 (10th Cir. 1983) (same, finding evidence of subsequent measures admissible to refute defense that rocks on ski slope were open and obvious).

¶19    In contrast, many courts have concluded that evidence of subsequent remedial measures is not admissible merely because defendants dispute their liability, allege contributory negligence, or argue that existing designs, standards, or conditions were adequate. *See, e.g.*, *Kelly v. Crown Equip. Co.*, 970 F.2d 1273, 1278 (3d Cir. 1992); *Hardy v. Chemetron Corp.*, 870 F.2d 1007, 1011 (5th Cir. 1989) ("Evidence of subsequent measures is no more admissible to rebut a claim of non-negligence than it is to prove negligence directly."); *Flaminio v. Honda Motor Co.*, 733 F.2d 463, 468 (7th Cir. 1984) ("Although any evidence of subsequent remedial measures might be thought to contradict and so in a sense impeach a defendant's testimony that he was using due care at the time of the accident, if this counted as 'impeachment' the exception would swallow the rule."); *Fasanaro v. Mooney Aircraft Corp.*, 687 F. Supp. 482, 486 (N.D. Cal. 1988) ("Plaintiff's attempt to phrase her argument . . . as rebuttal of [defendant's] contributory negligence defense is purely semantic. . . . [S]he argues that the decedent was not contributorily negligent because the defendant *was* negligent."); *Keating v. United Instruments, Inc.*,

11

742 A.2d 128, 130-31 (N.H. 1999); *Herzog v. Lexington Twp.*, 657 N.E.2d 926, 931-34 (Ill. 1995).

¶20    For example, in *Herzog*, the plaintiff sued the township following a car accident, arguing that a single "winding road" sign was insufficient to warn motorists of a series of curves on the road where he was injured. 657 N.E.2d at 928.  Before trial, the defendant successfully moved to exclude evidence that it had posted additional signs on that stretch of road after the plaintiff's accident. *Id.* at 928, 932.  On appeal, the plaintiff claimed such evidence should have been admitted to impeach the defendant's witnesses, who testified that the single sign was adequate. *Id.* at 929.

¶21    The Illinois Supreme Court affirmed the trial court's ruling, concluding that "evidence is not admissible for impeachment where the sole value of the impeachment rests on [the] same impermissible inference of prior negligence." *Id.* at 933.  It reasoned that allowing evidence of subsequent remedial measures "under the guise of impeachment" whenever a defendant disputes the plaintiff's negligence claim "would swallow the general rule prohibiting the introduction of subsequent remedial measures and frustrate the policy considerations that support it." *Id.; see also Hallmark*, 132 Ariz. at 439, 646 P.2d at 324 ("[T]he trial judge has broad power to insure that remedial measures evidence is not improperly admitted under the guise of

12

the 'other purpose' exception."); *Hightower v. Kan. City S. Ry. Co.*, 70 P.3d 835, 854 n.33 (Okla. 2003) ("Due to the very nature of the comparative negligence defense, it is inherently incapable of consideration separate and apart from the negligence claim to which it relates."); *DiPietro v. Cessna Aircraft Co.*, 16 P.3d 986, 991 (Kan. Ct. App. 2000) ("The process of determining comparative fault, when only two parties are involved, is a 'zero sum game.' When negligence is moved out of the plaintiff's column, it must move into the defendant's column.").[2]

**¶22** We find this latter line of cases persuasive. The mere fact that a defendant denies fault and alleges comparative negligence does not, alone, justify the admission of subsequent measure evidence for impeachment purposes. *See Tuer v. McDonald*, 701 A.2d 1101, 1112 (Md. 1997) ("The prevailing, and pragmatically necessary, view is that the impeachment exception cannot be read in so expansive a manner."). Admitting such evidence when it does not directly impeach a witness's testimony or other evidence offered by a defendant contravenes the general

---

[2] Although Johnson sued multiple defendants, the evidence of subsequent signage would have been probative only on the question of the State's liability. Moreover, the jury returned verdicts in favor of all defendants. Therefore, to the extent the evidence allegedly refuted the State's denial of fault and affirmative defenses, it would have served to increase only the State's liability.

13

rule that such evidence is inadmissible to prove negligence. *See Slow Dev. Co. v. Coulter*, 88 Ariz. 122, 127-28, 353 P.2d 890, 893-94 (1960) (before adoption of Rule 407, recognizing general common law rule of inadmissibility subject to exception when evidence of subsequent measures "tends to impeach the testimony of a witness"); *cf. Baroldy v. Ortho Pharm. Corp.*, 157 Ariz. 574, 585-87, 760 P.2d 574, 585-87 (App. 1988) (upholding trial court's admission, with limiting instruction, of various documents for purposes of impeaching manufacturer's claim that its product could not have caused the plaintiff's injury).

¶23    Evidence of subsequent measures may be admissible for impeachment purposes, however, when "the defendant goes beyond stating that the original condition was safe or adequate, and attempts to make exaggerated claims that the condition was the 'safest possible.'"  *Herzog*, 657 N.E.2d at 933; *accord Kelly*, 970 F.2d at 1278 (evidence of subsequent changes did not impeach expert's statements because he did not claim "the [product's] design was the best or the only one possible"); *cf. Slow Dev. Co.*, 88 Ariz. at 127-28, 353 P.2d at 893-94 (upholding admission of subsequent measures evidence to impeach results of defendant's safety tests because tests were conducted after safety improvements had been made).  Two of the cases Johnson cites illustrate this point.  In *Muzyka v. Remington Arms Co.*, 774 F.2d 1309, 1311-14 (5th Cir. 1985), the court held that

14

evidence of design changes to the defendant's rifle made shortly after the plaintiff's injury was admissible to impeach defendant's "superlative[]" claims that its rifle was the "best" and "safest" on the market. Similarly, in *Anderson v. Malloy*, 700 F.2d 1208, 1212-14 (8th Cir. 1983), evidence that the defendants had installed additional safety features after the plaintiff's injury was found admissible in part to impeach the defendants' "testi[mony] that they had done everything necessary" to assure safety.

¶24 Here, the State made no such exaggerated claims about the safety of the intersection. In its opening statement, the State said the decedent took "no evasive action" and was "solely responsible for this rear-end accident." In its closing argument, the State contended this was "not an intersection-related accident." In addition, a co-defendant stated the accident "occurred on a well-designed state highway with a clear line of sight for hundreds and hundreds of feet."

¶25 The overarching purpose of Rule 407's "impeachment" provision is to allow a party to refute evidence that, if left uncontroverted, would create an unfair advantage or misleading impression for the other party who seeks to exclude any evidence of subsequent measures. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1212-13 (10th Cir. 2006); *Duchess v. Langston Corp.*, 769 A.2d 1131, 1146-50 (Pa. 2001). But Johnson does not point to

any witness testimony or other direct claim by the State that the intersection was perfect or could not have been made safer; and the evidence of subsequent signage would not have contradicted the State's comments. *See Hardy*, 870 F.2d at 1011 (plaintiff's proffered evidence "would not have impeached [the witness's] testimony" and the plaintiff "points to no other evidence that the subsequent design change might have been used to impeach"). To admit the evidence of subsequent signage for impeachment purposes, we would have to "accept the premise that the conduct of placing additional signs . . . supports the view that the original condition was unsafe . . . [, which] directly contradicts the assumptions that support the general rule regarding subsequent remedial measures." *Herzog*, 657 N.E.2d at 933. Therefore, we find the other purpose provision in Rule 407 inapplicable on this record and hold that the trial court did not abuse its discretion by excluding the evidence of subsequent signage under Rule 407.[3]

---

[3] As the court of appeals correctly concluded, admitting evidence of subsequent signage to prove the State's knowledge of a dangerous condition "would have allowed [Johnson] to explicitly prove elements of negligence with evidence of subsequent remedial measures," a purpose clearly prohibited by Rule 407. *Johnson*, 222 Ariz. at 65 ¶ 26, 213 P.3d at 214. But we reject the court of appeals' suggestion that evidence of subsequent measures is inadmissible for "another purpose" under Rule 407 if "other proof" is available to fulfill that purpose. *Id.* at ¶ 24. Even if evidence of subsequent measures is admissible for another purpose, however, a trial court may appropriately consider whether it should be excluded under

**IV**

¶26     For the reasons stated above, we affirm the trial court's judgment in favor of the State and vacate the court of appeals' opinion.


_____
                    A. John Pelander, Justice


CONCURRING:


_____
Rebecca White Berch, Chief Justice


_____
Andrew D. Hurwitz, Vice Chief Justice


_____
Michael D. Ryan, Justice


_____
W. Scott Bales, Justice

---

Arizona Rule of Evidence 403.  *See, e.g.*, *Readenour*, 149 Ariz. at 449-50, 719 P.2d at 1065-66; *Hallmark*, 132 Ariz. at 439, 646 P.2d at 324; *see also Hernandez v. State*, 203 Ariz. 196, 197 ¶ 1, 200 ¶ 15, 52 P.3d 765, 766, 769 (2002) (holding that Arizona Rule of Evidence 408 does not preclude use of statements in notice of claim "to impeach a party's credibility," but admission of impeachment evidence "remains subject to Rules 401, 402 and 403, Ariz. R. Evid.").