BOLICK, J., concurring in part and dissenting in part.
 

 ¶41 The majority today concludes that our constitution's anti-diversion clause, which requires that revenues derived from taxes relating to the operation of motor vehicles must be allocated for public highways, does not apply to a tax relating to the operation of motor vehicles. Because I believe that the best route to a constitutional destination is usually a straight line, I must forsake the majority's circuitous journey. I therefore respectfully dissent from Part II of the majority opinion, while joining the Court's Commerce Clause analysis with some reservations.
 

 Anti-diversion Clause
 

 ¶42 If we asked a dozen random non-lawyers whether a rental vehicle tax is related to the operation or use of vehicles on the public highways or streets, chances are excellent that unless they perceived a trick question based on the obvious answer, all twelve would say "of course!" While I do not suggest that a term's obvious meaning is always the legal meaning, when our reading diverges markedly from a provision's ordinary meaning, we should have an exceedingly good reason for reaching that conclusion. Even then, we should hew as closely as possible to the text's plain meaning to help resist the temptation to exceed our constitutional boundaries. Even public objectives of the highest order, including (apparently) the building of publicly financed stadiums, do not license us to rewrite constitutional text.
 

 ¶43 We must presume that the amendment's framers consciously and intentionally chose the words they used.
 
 See
 

 Rumery v. Baier
 
 ,
 
 231 Ariz. 275
 
 , 278 ¶ 15,
 
 294 P.3d 113
 
 , 116 (2013). Our duty is to give effect to those words.
 
 See
 
 id.
 

 In giving effect to the words chosen, we start with the words' plain meaning.
 
 See
 
 id.
 

 ;
 
 Cain v. Horne
 
 ,
 
 220 Ariz. 77
 
 , 80 ¶ 10,
 
 202 P.3d 1178
 
 , 1181 (2009). All agree that the term "relating to" is quite broad; from that we can only properly infer that the framers intended a broad scope. Thus, when we seek to apply a "limiting principle," we should do so in the manner most consistent with the broad language chosen by the
 amendment's drafters.
 
 See
 

 Cain
 
 ,
 
 220 Ariz. at
 
 80 ¶ 10,
 
 202 P.3d at 1081
 
 ;
 
 cf.
 

 Johnson v. State ex rel. Dep't of Transp.
 
 ,
 
 224 Ariz. 554
 
 , 557 ¶ 15,
 
 233 P.3d 1133
 
 , 1136 (2010) (citing with approval to another court's rejection of a narrow interpretation of Federal Rule of Evidence 407 because "this narrow interpretation ignores the literal language of the rule" (internal quotation marks omitted)).
 

 ¶44 Instead, the majority construes the term "relating to" in a narrow way that changes its meaning. The Court holds today that "relating to" actually means "triggered by" or a "prerequisite to,"
 
 supra
 
 ¶ 39, thereby substituting constitutional text with what the majority determines its authors meant to say. Even under that judicially-constructed rubric, revenues collected from the surcharge here should be allocated to public highways and roadways. And though the term "relating to" as used in the anti-diversion clause is indeed elastic, a linear view of the enactments at issue yields a more straightforward interpretation that does not necessitate rewriting constitutional language.
 
 [1]
 

 ¶45 It is undisputed that the anti-diversion clause emanated from Arizona's desire to retain federal highway funding. In the Hayden-Cartwright Amendment, Congress mandated that tax revenues derived from the use or operation of motor vehicles would be dedicated to highway funding. Pub. L. No. 73-393, § 12,
 
 48 Stat. 993
 
 , 995 (1934). Then the voters approved article 9, section 14 of the Arizona Constitution to effectuate that command. Many years later, the legislature enacted the current surcharge on rental car companies and allocated the funding to sports authorities. Examining the relevant provisions of these three enactments in close proximity is highly probative.
 

 ¶46 The pertinent provision of the Hayden-Cartwright Amendment specifically notes that "it is unfair and unjust to tax motor-vehicle transportation unless the proceeds of such taxation are applied to the construction, improvement, or maintenance of highways." Hayden-Cartwright Amendment § 12. Thus, the Amendment directs states wishing to retain federal highway funding to restrict to highway use revenues derived from
 

 [s]tate motor vehicle registration fees, licenses, gasoline taxes, and
 
 other special taxes on motor-vehicle owners and operators of all kinds
 
 ....
 

 Id.
 

 (emphasis added). The italicized words are illuminating, as they contain language that is both limiting and broad.
 

 ¶47 First, the term "other special taxes" connotes taxes-like registration fees, licenses, and gasoline taxes-that are directed specifically to the use of motor vehicles. The
 
 ejusdem generis
 
 canon supports this reading: where a general term, such as "other special taxes," follows a list of specific terms, the general term should be construed narrowly to "persons or things of the same general nature or class" as the more specific terms.
 
 Estate of Braden ex rel. Gabaldon v. State
 
 ,
 
 228 Ariz. 323
 
 , 326 ¶ 13,
 
 266 P.3d 349
 
 , 352 (2011) (quoting
 
 State v. Barnett
 
 ,
 
 142 Ariz. 592
 
 , 596,
 
 691 P.2d 683
 
 , 687 (1984) ). Consequently, "other special taxes" should be interpreted narrowly to mean relating to the use of motor vehicles as the terms that precede it are of this nature. Thus, the term "special taxes" would not encompass
 
 general
 
 taxes that included the use of motor vehicles but were not specially directed toward them. The "special taxes" phrasing also shows that the Hayden-Cartwright Amendment only implicates taxes that are directed specifically to a particular project rather than general taxes that go to the general fund.
 
 Tax
 
 , Black's Law Dictionary (10th ed. 2014) (defining special tax as "[a] tax levied for a unique purpose").
 

 ¶48 Second, the term "motor-vehicle owners and operators of all kinds" is very broad, and thus is meant to be inclusive, not exclusive. Given the statute's stated purpose, this provision suggests that it is the use of the roads rather than hyper-technical legal distinctions among motor-vehicle owners and operators that should govern the statute's applicability; the effect on the roads is the same regardless.
 

 ¶49 In turn, Arizona voters implemented the Hayden-Cartwright Amendment through the anti-diversion clause, article 9, section 14 of the Arizona Constitution, which provides in relevant part:
 

 No moneys
 
 derived
 
 from fees, excises, or license taxes relating to registration,
 
 operation, or use of vehicles on the public highways or streets
 
 ... shall be expended for other than highway and street purposes ....
 

 (Emphasis added.)
 

 ¶50 This provision should be read
 
 in pari materia
 
 with the Hayden-Cartwright Amendment as the former implements the requirements of the latter and thus each deals with the same subject matter.
 
 See
 

 David C. v. Alexis S.
 
 ,
 
 240 Ariz. 53
 
 , 55 ¶ 9,
 
 375 P.3d 945
 
 , 947 (2016) ("Statutes that are in pari materia-those of the same subject or general purpose-should be read together and harmonized when possible."); Antonin Scalia & Bryan A. Garner,
 
 Reading Law: The Interpretation of Legal Texts
 
 252 (2012) ("Any word or phrase that comes before a court for interpretation is part of a whole statute, and its meaning is therefore affected by other provisions of the same statute. It is also, however, part of an entire
 
 corpus juris
 
 .... Hence laws dealing with the same subject-being
 
 in pari materia
 
 ...[,] should if possible be interpreted harmoniously."). Indeed, if the constitutional provision did not fully and faithfully follow the federal statute, Arizona would jeopardize federal highway funds-and ironically, the Court's decision today may risk exactly that-which was precisely why it was adopted.
 
 See
 
 Ariz. Sec'y of State, 1952 Publicity Pamphlet 5 (1952), http://azmemory.azlibrary.gov/digital/collection/statepubs% 20/id/10641 ("Why jeopardize federal aid by allowing any diversion of road user taxes ...?" (emphasis omitted));
 
 id.
 
 at 4 (expressly referring to the Hayden-Cartwright Amendment);
 
 Saban Rent-A-Car LLC v. Ariz. Dep't of Revenue
 
 ,
 
 244 Ariz. 293
 
 , 299 ¶ 14,
 
 418 P.3d 1066
 
 , 1072 (App. 2018) (stating the anti-diversion clause "was enacted in response to federal legislation that conditioned grants of federal highway funds on a state's assurance that revenue 'from State motor vehicle registration fees, licenses, gasoline taxes, and other special taxes on motor-vehicle owners and operators of all kinds' would be used exclusively for highway purposes" (quoting Hayden-Cartwright Amendment § 12)). In that way, the Hayden-Cartwright Amendment provides definition for the subsequent state constitutional provision.
 

 ¶51 Therefore, viewed in this proper context, a tax is "relating to" if it is specially directed at the operation or use of vehicles on public highways. Similarly, the broad terms "use" and "operation" are directed toward the ultimate activity. Again, the text evinces no intent to elevate form over substance-if the vehicles are used or operated on public highways, then any fee or tax specially directed toward that use implicates the anti-diversion clause.
 

 ¶52 That leaves the question of whether the car rental surcharge is such a fee or tax. Once again, we do not need to travel beyond the statutory language itself, for it furnishes the plain answer. A.R.S. § 5-839(C) states in relevant part:
 

 The surcharge applies to the business of leasing or renting ...
 
 motor vehicles for hire without a driver, that are designed to operate on the streets and highways of this state
 
 ....
 

 (Emphasis added.) The italicized language essentially parallels the wording of the anti-diversion clause. The surcharge's plain language illustrates that it only applies when someone rents a "motor vehicle[ ] ... without a driver, ... designed to operate on the streets and highways of this state"; as such, the taxable event is that the renter of the motor vehicle will be driving it on the public roads.
 

 ¶53 A straight line can be drawn from the Hayden-Cartwright Amendment to the anti-diversion clause to the statute before us. The "limiting principle" that the majority searches for at great length is supplied by the relevant text of these provisions. The surcharge is a special tax directed toward the use or operation of vehicles on public roads, and the revenues it generates must be allocated to public roads.
 

 ¶54 When the relevant constitutional and statutory language resolves the dispute, as it does here, it is with great hazard that we stray beyond it.
 
 State ex rel. Brnovich v. City of Tucson
 
 ,
 
 242 Ariz. 588
 
 , 604 ¶ 67,
 
 399 P.3d 663
 
 , 679 (2017) (Bolick, J., concurring in part and in the result) ("We look first to the language of the provision, for if the constitutional language is clear, judicial construction is neither required nor proper." (quoting
 
 Perini Land & Dev. Co. v. Pima County
 
 ,
 
 170 Ariz. 380
 
 , 383,
 
 825 P.2d 1
 
 , 4 (1992) ));
 
 accord, e.g.
 
 ,
 
 State v. Winegardner
 
 ,
 
 243 Ariz. 482
 
 , 489 ¶ 29,
 
 413 P.3d 683
 
 , 690 (2018) (Lopez, J., dissenting in part and concurring in the result) ("In doing so, we glossed over the Rule's plain language to find a much narrower meaning in its legislative history. But our decisions repeatedly emphasize that we should apply plain meaning before resorting to secondary interpretation methods such as legislative history.");
 
 Butler Law Firm, PLC v. Higgins
 
 ,
 
 243 Ariz. 456
 
 , 459 ¶ 7,
 
 410 P.3d 1223
 
 , 1226 (2018) ;
 
 Brenda D. v. Dep't of Child Safety
 
 ,
 
 243 Ariz. 437
 
 , 449 ¶ 45,
 
 410 P.3d 419
 
 , 431 (2018) (Timmer, J., dissenting in part and concurring in part);
 
 State v. Holle
 
 ,
 
 240 Ariz. 300
 
 , 302 ¶ 11,
 
 379 P.3d 197
 
 , 199 (2016).
 

 ¶55 The trial court employed a similar analysis and reached the correct result, holding that "the class of taxable transactions is defined by the relationship of those transactions to the rental of cars. That the [surcharge] relates to the use of vehicles on the public highways or streets is plain. Its receipts may therefore be applied only to one or more of the purposes set down by the Constitution. The construction and maintenance of athletic facilities [are] not among those purposes."
 

 ¶56 Although we need (and should) not go beyond constitutional and statutory text in resolving this case, this analysis, unsurprisingly, also accords with the drafters' stated intent. As the majority observes, the amendment's drafters admonished that the enactment would not alter the then-current tax system.
 
 Supra
 
 ¶ 31. This reading is consistent with that stated intent: general taxes that affected motor vehicles among other goods or services would be unaffected, while taxes and fees directly applied to motor vehicles or their use or operation would be subject to the amendment's constraints.
 

 ¶57 The majority creates an exception to the anti-diversion clause that defeats both its language and intent. That the surcharge is assessed not directly on individuals but on businesses, who pass it on to consumers, is irrelevant in a constitutional provision that focuses on use and operation of motor vehicles on public highways.
 
 Cf.
 

 Maryland v. Louisiana
 
 ,
 
 451 U.S. 725
 
 , 737,
 
 101 S.Ct. 2114
 
 ,
 
 68 L.Ed.2d 576
 
 (1981) (concluding that consumers had standing because "the Special Master proper[l]y determined that 'although the tax is collected from the pipelines, it is really a burden on consumers' "). More importantly, whether the tax is borne by the owners (the rental car companies) or the operators (vehicle renters) makes no difference from the perspective of effectuating the requirements of the Hayden-Cartwright Amendment, which expressly encompasses both.
 

 ¶58 Even so, clearly it is the vehicle renters, as vehicle operators, and not the rental car companies that are the ultimate object of the surcharge, as the arguments in favor of adoption of the surcharge in the voter pamphlet repeatedly emphasized.
 
 See, e.g.
 
 , Ariz. Sec'y of State, 2000 Publicity Pamphlet Sample Ballot for the Tourism & Sports Authority 10 (2000) [hereinafter 2000 Publicity Pamphlet], https://ia601408.us.archive.org/31/items/PubPamp2000_201902/Pub% 20Pamp% 202000.pdf ("The tax burden will fall primarily on visitors to the County.");
 
 id.
 
 at 12 ("[V]isitors to the region, through a modest increase in the cost of hotel and rental car use, will absorb a large portion of the cost ....");
 
 id.
 
 at 14 ("Finally, the financing created by this proposition will be born[e] almost entirely by the out of state visitors.");
 
 id.
 
 at 16 ("But the best part of the proposal is that it will cost Arizona residents next to nothing. As much as 95% of the new hotel and car rental taxes will be borne by visitors to our state.");
 
 id.
 
 at 17 ("All of these benefits to our communities can be provided with the passage of Proposition 302 without increasing taxes paid by local residents, and
 
 without negatively impacting the car rental
 

 and hotel industries
 
 ." (emphasis added)). The prescient forecast by those in favor of shifting the burden of paying for AzSTA tourism projects to rental car users themselves played out exactly as planned, as the trial court found, which shows precisely why the surcharge violates the anti-diversion clause.
 
 See
 

 supra
 
 ¶ 3 (noting the rental car companies pass the surcharge on to the vehicle renters). The surcharge is imposed on rental car users for their road use; thus, its revenues must be earmarked for road use projects only. Because they are not, the surcharge violates the anti-diversion clause.
 

 ¶59 The Court has created a loophole that allows the legislature and those seeking its favor to divert funding from highways to other purposes, without the pesky inconvenience of constitutional amendment. For the foregoing reasons, and with great respect to my colleagues, I dissent on this issue.
 

 Dormant Commerce Clause
 

 ¶60 I agree with my colleagues that the statute does not violate the "dormant" Commerce Clause, as presently construed by the U.S. Supreme Court.
 
 [2]
 
 However, I find in the record more evidence than my colleagues of an intent to place the predominant economic burden of this tax on out-of-state consumers, who after all are much more likely to rent cars in Arizona for non-replacement purposes (for which more-favorable terms apply on the statute's face) than Arizona residents.
 
 [3]
 
 And, pertinent to the political equation here, out-of-state visitors are unable to vote to protect their economic interests, so they represent an appealing revenue source.
 

 ¶61 "[A] tax may violate the Commerce Clause if it is facially discriminatory, has a discriminatory intent, or has the effect of unduly burdening interstate commerce."
 
 Amerada Hess Corp. v. Dir., Div. of Taxation
 
 ,
 
 490 U.S. 66
 
 , 75,
 
 109 S.Ct. 1617
 
 ,
 
 104 L.Ed.2d 58
 
 (1989). In
 
 Commonwealth Edison Co. v. Montana
 
 , the Court rejected a Commerce Clause claim against a facially nondiscriminatory tax that disproportionately burdened out-of-state businesses as the Court reasoned the tax was related to activities and benefits taking place inside the state.
 
 453 U.S. 609
 
 , 618-29,
 
 101 S.Ct. 2946
 
 ,
 
 69 L.Ed.2d 884
 
 (1981). By contrast, in
 
 Camps Newfound/Owatonna, Inc. v. Town of Harrison
 
 , the Court struck down a differential tax burden that "penalize[d] the principally nonresident customers of businesses catering to a primarily interstate market."
 
 520 U.S. 564
 
 , 576,
 
 117 S.Ct. 1590
 
 ,
 
 137 L.Ed.2d 852
 
 (1997).
 

 ¶62 As a result, this question is very close. Plaintiffs have argued this case as one of discriminatory intent, and indeed the statute is facially nondiscriminatory and has been applied in a nondiscriminatory way. The U.S. Supreme Court has not invalidated state policies solely on the basis of discriminatory intent.
 
 But cf.
 

 S.D. Farm Bureau, Inc. v. Hazeltine
 
 ,
 
 340 F.3d 583
 
 , 593-96 (8th Cir. 2003) (invalidating a constitutional amendment on the basis of "discriminatory purpose"). Given the Supreme Court's conflicting precedents and that it has not yet provided significant guidance on how to treat a Commerce Clause claim based on discriminatory intent, I join the majority in denying relief on that claim.
 

 I agree with the majority that the Plaintiffs' principal assertion that "relating to" means "connected to" is unpersuasive.
 
 See
 

 supra
 
 ¶ 28.
 

 The Commerce Clause effectuated one of the major purposes of our federal constitution, which was to prevent parochial trade barriers erected by states favoring their own domestic industries, thereby ensuring to all the abundant benefits of free trade.
 
 Hughes v. Oklahoma
 
 ,
 
 441 U.S. 322
 
 , 325-26,
 
 99 S.Ct. 1727
 
 ,
 
 60 L.Ed.2d 250
 
 (1979). It did so by vesting in Congress, rather than the states, the power to regulate interstate commerce. This application of the Commerce Clause is far from dormant, as wine-lovers, among others, can attest.
 
 Granholm v. Heald
 
 ,
 
 544 U.S. 460
 
 ,
 
 125 S.Ct. 1885
 
 ,
 
 161 L.Ed.2d 796
 
 (2005).
 

 One quote from the publicity pamphlet in particular sums it up with admirable candor: "[T]he best part of the proposal is that it will cost Arizona residents next to nothing. As much as 95% of the new hotel and car rental taxes will be borne by visitors to our state." 2000 Publicity Pamphlet,
 
 supra
 
 , at 16;
 
 see also
 

 supra
 

 ¶ 58
 
 (collecting quotes evincing discriminatory intent).